IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Nicholas C. GRAPSAS, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Respondent,

v.

Nicholas C. GRAPSAS, Respondent-Appellant.

Supreme Court

*No. 97–1348–D. Submitted on briefs March 4, 1999.—Decided
May 6, 1999.*

(Also reported in 591 N.W.2d 862.)

411

For the respondent-appellant there were briefs by *Nicholas C. Grapsas*, Madison.

For the complainant-respondent there was a brief by *Paul W. Schwarzenbart*, counsel, for the Board of Attorneys Professional Responsibility, Madison.

¶ 1.   PER CURIAM.   Attorney Nicholas C. Grapsas appealed from the referee's recommendation that he be required to make restitution to a client for the fee she paid him to represent her in an immigration matter and for the costs she incurred in returning to her home country in order to apply for a visa as a result of Attorney Grapsas' unsuccessful attempt to obtain a nonimmigrant status for her. Attorney Grapsas did not appeal timely from the referee's initial report concluding that he had engaged in professional misconduct in his handling of that client's matter, for which the referee recommended he be publicly reprimanded. Accordingly, the issue of Attorney Grapsas' professional misconduct is before us on review of the referee's report.

¶ 2.   We determine that Attorney Grapsas' failure to provide the client proper representation in her legal matter warrants the public reprimand recommended by the referee. We determine further that Attorney Grapsas should be required to make restitution as the referee recommended. Restitution is an appropriate component of the discipline we impose on Attorney Grapsas, as it was his professional misconduct that prevented the client from obtaining the legal outcome she sought while in this country and required her to incur travel costs to pursue the matter thereafter.

¶ 3. Attorney Grapsas was admitted to practice law in Wisconsin in 1970, practices in Madison, and holds himself out to the public and advertises as having expertise in the area of immigration law. In 1993 the court publicly reprimanded him for failing to act with reasonable diligence and promptness in representing a client applying for U.S. citizenship, failing to keep that client reasonably informed of the status of that application and comply with her reasonable requests for information concerning it, refusing to return her unearned retainer when she terminated his representation, misrepresenting to his client, to the Board of Attorneys Professional Responsibility (Board), and to the district professional responsibility committee that he had acted in the client's matter, and failing to respond timely to the Board's requests for information concerning the client's grievance. *Disciplinary Proceedings Against Grapsas*, 174 Wis. 2d 816, 498 N.W.2d 400.

¶ 4. The referee in the instant proceeding, Attorney Marjorie H. Schuett, made findings of fact and conclusions of law based on a partial stipulation of the parties and on evidence presented at a disciplinary hearing. Those findings concerned Attorney Grapsas' representation of a client who retained him in May 1995 to petition the Immigration and Naturalization Service (INS) for a change in her nonimmigrant visa status and for authorization to continue employment in this country.

¶ 5. The client, a citizen of Taiwan, Republic of China, was present in this country on a student visa and was lawfully employed at a music school as a piano and voice instructor during the one-year period after completing her education. Her nonimmigrant visa status was to expire June 21, 1995, following which she

could remain in this country an additional 60 days to prepare for her departure, but in no event could she remain here after August 20, 1995. She retained Attorney Grapsas to petition INS for a change in her entry visa status from nonimmigrant student to nonimmigrant specialty occupation worker. As part of that retainer, Attorney Grapsas provided legal services to the client's employer concerning whether it could continue to employ her after June 21, 1995. The client paid Attorney Grapsas $505 for legal services and expenses in representing her and her employer in the matter.

¶ 6. When she retained Attorney Grapsas, the client asked his advice and counsel on the question whether she could continue employment with the music school after June 21, 1995. In response, Attorney Grapsas advised her and the music school that she could do so provided she had filed with INS by that date an application for change of status and the application was pending.

¶ 7. At the time he gave that advice, Attorney Grapsas was aware of INS's stated position that a nonimmigrant student could not lawfully be employed in this country during the 60-day period allowed for preparation for departure following expiration of the one-year employment period after completion of education and that employment during that time would render the person "out of status" and ineligible for the status change his client sought. Attorney Grapsas contended that there was judicial authority to support the position that his client could lawfully be employed in this country during the 60-day period allowed for preparation for departure. He was aware, however, that INS had not acquiesced in the judicial decisions on which he relied.

¶ 8. At no time during his representation of the client and the music school did Attorney Grapsas explain to either of them that it was INS's stated position that a person in his client's position could not lawfully be employed after expiration of the one-year employment period, which in his client's case was June 21, 1995. He did not tell the client or the employer that he disagreed with INS's stated position on this issue until he met with the client in April of 1996. Also, Attorney Grapsas never explained to either the client or the employer that there was a risk that the client's continued employment could render her "out of status" and ineligible for the status change she was seeking or that the music school could be subject to sanctions for employing an alien without work authorization.

¶ 9. On June 15, 1995, Attorney Grapsas, on behalf of the music school, sent an application to the U.S. Department of Labor (DOL) requesting that the music school be permitted to employ his client in the nonimmigrant status she was seeking. That filing was a condition to the client's petitioning INS for a change to that nonimmigrant status. DOL returned the application to Attorney Grapsas June 19, 1995, because it lacked information concerning the method by which the prevailing wage for the client's position had been determined. Attorney Grapsas faxed an amended application June 30, 1995, and he received notification July 7, 1995, that DOL had approved the amended application.

¶ 10. On or about July 10, 1995, Attorney Grapsas mailed the client's petition for change of status to INS, together with a $155 check written on his trust account for the filing fee. At various times thereafter, he represented to the client that he had filed the status change petition with INS by mail in June or July 1995.

When he had met with the client in June 1995, he told her it would take more than a month to get an answer from INS on the petition. After waiting about a month, the client telephoned him, and he told her that it would probably take a little longer for INS to act on her petition. Several weeks later and several times thereafter, the client again contacted Attorney Grapsas regarding the status of her petition.

¶ 11.  Attorney Grapsas knew that INS typically issued a notice of receipt of a petition to change nonimmigrant status within two or three weeks after its filing, but he did not receive a receipt from INS in respect to this client's status change petition. His trust account check for the filing fee sent with the petition never was negotiated by INS, and during the fall of 1995 he could have checked his trust account records to ascertain that fact. In addition, he should have been concerned by early fall of 1995 that the petition he had attempted to file had not been received by INS. It was not until October 2, 1995, that he wrote to INS inquiring into the status of that petition.

¶ 12.  In January 1996 the client became increasingly worried about her petition for status change, and when she contacted INS directly, she learned that it had no file under her name. Soon thereafter, she learned that INS routinely issued receipts for filed petitions seeking a change in entry status and asked Attorney Grapsas whether he had received a receipt confirming his filing of her petition. Attorney Grapsas responded that he would refile the petition.

¶ 13.  At the beginning of February 1996 Attorney Grapsas wrote INS inquiring into the status of his client's petition and on April 29, 1996 refiled the petition. On May 3, 1996, INS received that petition and issued a receipt and file number. On July 16, 1996, INS

416

approved the music school's petition to employ the client as a nonimmigrant worker but denied the client's status change petition for the reason that her nonimmigrant student status had expired prior to the filing of her status change petition and, consequently, she was not eligible for a change in status. INS also concluded that the client was ineligible for status change because she was "out of status" by reason of having been employed unlawfully by the music school after June 21, 1995. Following the denial of her status change petition, the client returned to Taiwan for the sole purpose of reapplying for a nonimmigrant specialty occupation worker visa, incurring approximately $1000 in travel expenses.

¶ 14. By letter of May 21, 1996, the Board informed Attorney Grapsas that the client had filed a grievance concerning his representation and asked that he provide a response within 20 days. When Attorney Grapsas did not respond, the Board sent him a second request by certified mail, but Attorney Grapsas did not respond.

¶ 15. On the basis of those facts the referee concluded as follows. By failing to explain the matter to an extent reasonably necessary to permit his client to make informed decisions regarding the representation and failing to inform her and her employer that there were substantial risks that the client's continued work for the employer after June 21, 1995, could result in the denial of the status change petition, as well as the imposition of sanctions against the employer, Attorney Grapsas violated SCR 20:1.4(b).[1] His failure to act with reasonable diligence and promptness in representing

---

[1] SCR 20:1.4 provides, in pertinent part:

**Communication**

. . .

417

the client, failure to make reasonable inquiries with INS concerning his attempt to file the status change petition in July 1995, and failure to refile the petition until April 29, 1996 violated SCR 20:1.3.[2] His failure to respond to two inquiries from the Board concerning the client's grievance violated SCR 21.03(4)[3] and 22.07(3).[4]

¶ 16.  As discipline for that professional misconduct, the referee recommended that Attorney Grapsas be publicly reprimanded. In making that recommendation, the referee noted the similarities between the misconduct in this matter and some of the misconduct for which Attorney Grapsas previously was reprimanded. The referee also recommended that Attorney

(b)   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[2] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] SCR 21.03 provides, in pertinent part:

**General principles.**
. . .
(4)   Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[4] SCR 22.07 provides, in pertinent part:

**Investigation.**
. . .
(3)   The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

Grapsas be required to pay the costs of this disciplinary proceeding.

¶ 17.  Because the referee's report did not address the issue of restitution to the client for the fee she had paid Attorney Grapsas and the costs she incurred in returning to her homeland as a result of his representation, we remanded the matter to the referee for a recommendation on the issue of restitution to the client and, if necessary, for additional findings of fact in respect to that issue. The referee filed a supplemental report recommending that Attorney Grapsas be required to pay restitution to the client in the amount of $1505. It is from that recommendation that Attorney Grapsas took the instant appeal.

¶ 18.  Attorney Grapsas contended that the cause of INS's denial of his client's petition for a status change was not his handling of the matter but the inability of the client's employer to obtain DOL approval of the labor condition application prior to the date his client's one-year practical training period expired. He asserted that the requested change of status was not denied because the client continued to work after the practical training period expired. He based his argument on the language set forth in the INS decision that his client had been determined "out of status" when the petition for status change was filed.

¶ 19.  Contrary to Attorney Grapsas' assertions, it was not clear from the INS decision that the client's change of status was the result of the expiration of her practical training period before her employer could obtain approval of the labor condition application. Attorney Grapsas' reliance on the language of the INS decision assumes that his client was determined to be "out of status" once her practical training period expired, but that ignores the fact that the client was

entitled to a 60-day period following that expiration in order to prepare for departure from this country. Moreover, it was during that 60-day period that the client continued to work, pursuant to the advice of Attorney Grapsas, who was aware of the INS position that doing so was prohibited and would render a person "out of status" and ineligible for the status change being sought.

¶ 20. Further, in the course of this disciplinary proceeding, Attorney Grapsas admitted facts that are inconsistent with his argument. He initially admitted the allegations of the Board's complaint that the petition for his client's status change was denied by INS for two reasons: because her nonimmigrant F–1 status had expired before her petition was filed and because she had been employed unlawfully after the expiration of her one-year practical training period. He later stipulated to those facts.

¶ 21. In addition, there was expert evidence at the disciplinary hearing that it was the client's continuing to work after expiration of her F–1 nonimmigrant status that caused her petition for status change to be denied. The expert asserted that if Attorney Grapsas had filed the status change petition prior to the end of the 60-day period following expiration of the practical training period and if his client had stopped working as of the last date of that training period, the client would have been eligible for the change of status.

¶ 22. In respect to his argument regarding the failure to obtain DOL approval timely, the Board argued that Attorney Grapsas should have obtained the necessary information from the client's employer before he completed the DOL forms he sent to the employer for signature. Moreover, when he received the completed forms from the employer, he should have

420

supplied any omissions before sending them on to DOL. Had he done so, the Board contended, there was every likelihood that the client's petition could have been filed by the last day of her practical training period.

¶ 23.  We adopt the referee's findings of fact and conclusions of law and determine that a public reprimand is the appropriate discipline to impose on Attorney Grapsas for his professional misconduct established in this proceeding. Because the amount of financial harm the client suffered is uncontested and was the result of Attorney Grapsas' erroneous advice and his failure to act promptly and diligently in the matter, it is appropriate that we require him to make restitution to his client for the fee she paid him and for her travel costs.

¶ 24.  IT IS ORDERED that Nicholas C. Grapsas is publicly reprimanded as discipline for professional misconduct.

¶ 25.  IT IS FURTHER ORDERED that within 30 days of the date of this order, Nicholas C. Grapsas make restitution in the amount of $1505 to the client in the matter considered in this proceeding.

¶ 26.  IT IS FURTHER ORDERED that within 60 days of the date of this order, Nicholas C. Grapsas pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Nicholas C. Grapsas to practice law in Wisconsin shall be suspended until further order of the court.