IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Nicholas C. GRAPSAS, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Respondent,

v.

Nicholas C. GRAPSAS, Respondent-Appellant.†

Supreme Court

*No. 98–0571–D. Oral argument November 4, 1999.—Decided
December 3, 1999.*

(Also reported in 602 N.W.2d 526.)

†Motion for reconsideration denied January 14, 2000.

For the respondent-appellant there were briefs and oral argument by *Nicholas C. Grapsas*, Madison.

For the complainant-respondent there was a brief and oral argument by *Paul W. Schwarzenbart* for the Board of Attorneys Professional Responsibility, Madison.

¶ 1. PER CURIAM. Attorney Nicholas Grapsas appealed from the referee's conclusions that he engaged in professional misconduct in his representation of a client in an immigration matter and the recommendation that his license to practice law be suspended as discipline for that misconduct. Attorney Grapsas failed to file the client's application with the Immigration and Naturalization Service (INS) timely, failed to keep the client adequately informed of the status of that application and respond promptly to her reasonable requests for information concerning it, misrepresented to the client on numerous occasions over an extended period that he had filed the application, and altered the dates of the signatures of the client and her employer on the application without obtaining their authorization. He also failed to advise his client of

the steps necessary to continue her daughter's nonimmigrant status in this country and notify the client and her daughter promptly of the denial of the application he ultimately filed to extend the daughter's visa, failed to return the balance of the client's retainer she had paid him, and did not respond timely to letters from the Board of Attorneys Professional Responsibility (Board) inquiring into his conduct in the matter. As discipline for that misconduct, the referee recommended that, at a minimum, his license to practice law be suspended for six months, that he be required to make restitution to the client, and that conditions be imposed on the reinstatement of his license.

¶ 2.   We determine that the referee properly concluded that Attorney Grapsas engaged in professional misconduct in the client's immigration matter and that a six-month license suspension is the appropriate discipline to impose for that misconduct. Not only did he fail in his professional responsibility to pursue diligently the matter for which he was retained, but he also repeatedly led his client to believe that he had taken the appropriate steps in that matter and actively sought to keep his lack of diligence from his client, to the extent of altering dates on the forms he ultimately submitted to the governmental authorities. In addition, he failed to render the assistance the client rightfully expected concerning her daughter's immigration status.

¶ 3.   This is the third occasion we have had to discipline Attorney Grapsas for similar misconduct in clients' immigration matters, and we are concerned that the pattern of misconduct he has established puts at risk those clients he currently is representing in immigration matters—clients who may be particularly vulnerable because of their unfamiliarity and inexperi-

ence with our legal system. Accordingly, we direct the Board to monitor closely Attorney Grapsas's compliance with the requirements imposed by our rule, SCR 22.26,[1] on an attorney whose license is suspended.

[1] SCR 22.26 provides:

**Activities on revocation or suspension of license.**

(1) (a) A disbarred or suspended attorney on or before the effective date of disbarment or suspension shall:

1. Notify, by certified mail, all clients being represented in pending matters of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension.

2. Advise the clients to seek legal advice of the client's own choice elsewhere.

(b) A disbarred or suspended attorney with a matter pending before a court or administrative agency shall promptly notify the court or administrative agency and the attorney for each party of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension. The notice must identify the successor attorney or, if there is none at the time of the notice, state the place of residence of the client of the disbarred or suspended attorney.

(2) A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

(3) A suspended or disbarred attorney shall make within the first 15 days after the effective date of disbarment or suspension, all arrangements for the permanent or temporary closing of or winding up of the attorney's practice and may only aid in having others take over clients' work in process. If a suspended or disbarred attorney disappears or dies and the attorney has failed to comply with this subsection and no partner, personal representative or other responsible party capable of conducting the attorney's affairs is known to exist, a judge of a court of record in a county in which the attorney maintained an office shall appoint an attorney to enter the former offices of the disbarred or suspended attorney or other location as may be necessary for the sole purpose of protecting the client's rights, the clients' files and the clients' property, and the delivery thereof to the clients or their successor counsel. The appointed attorney may be compensated out of the assets of

the suspended or disbarred attorney in the amount approved by the judge.

(4)    The disbarred or suspended attorney shall file with the administrator within 25 days after the effective date of the disbarment or suspension order, an affidavit showing:

(a)    Full compliance with the provisions of the order and with the rules and procedures.

(b)    All other state, federal and administrative bodies before which the attorney is admitted to practice. ·

(c)    A list of all clients in pending matters, and a list of all matters pending before any court or administrative agency and the case number.

(d)    A disbarred or suspended attorney shall maintain records of the various steps taken under the rules and these procedures so that, upon any subsequent proceeding instituted by or against the attorney, proof of compliance with the rules and these procedures and with the disbarment or suspension order is available. Proof of compliance with these procedures is a condition precedent to reinstatement.

(5)    The administrator shall have published a notice of the suspension or disbarment in the Wisconsin bar bulletin and in a newspaper of general circulation in each county in which the disbarred or suspended attorney maintained an office for the practice of law.

(6)    The administrator shall notify all judges in this state of the order of suspension or disbarment.

(7)    Nonpermitted activities of other lawyers. A member of the bar of this state may not use the name of a disbarred or suspended lawyer and may not authorize or knowingly permit a disbarred or suspended lawyer to:

(a)    Interview clients or witnesses or participate therein, except that in the course of employment by a commercial employer he or she may interview witnesses and participate in the investigation of claims;

(b)    Prepare cases for trial;

(c)    Do any legal research or other law work activity in a law office;

(d)    Write briefs or trial memoranda; or

(e)    Perform any services for him or her either on a salary or a percentage or a fee-splitting basis, except that he or she may share

sion and consequent inability to act as attorney in those matters after the effective date of the suspension, advise those clients to seek legal advice elsewhere, and notify courts and administrative agencies where client matters are pending of his license suspension. Further, his notice to courts and agencies must identify each client's successor attorney or, if there is none, specify where the client resides.

¶ 4.   Attorney Grapsas was admitted to practice law in Wisconsin in 1970 and practices in Madison, primarily in the area of immigration law. In 1993, the court publicly reprimanded him for failing to provide prompt and diligent representation to a client applying for U.S. citizenship, failing to keep that client reasonably informed of the status of that application and comply with her reasonable requests for information concerning it, refusing to return her unearned retainer when she terminated his representation, misrepresenting to his client, the Board, and the district professional responsibility committee that he had acted in the client's matter, and failing to respond timely to the Board's request for information concerning the client's grievance. *Disciplinary Proceedings Against Grapsas*, 174 Wis. 2d 816, 498 N.W.2d 400.

¶ 5.   In March of this year, the court publicly reprimanded Attorney Grapsas for not explaining an immigration matter to a client to the extent reasonably necessary to permit her to make informed decisions regarding the representation and not informing her and her employer of substantial risks to the client's ability to work after the expiration date of her visa,

attorney fees on a quantum meruit basis only for services performed prior to disbarment or suspension;

(f)   An attorney shall not permit a disbarred or suspended attorney to engage in any activity prohibited by this rule.

failing to make reasonable inquiries with INS concerning his attempt to file a petition to change the client's status, not refiling the petition timely, and not responding to inquiries from the Board concerning the client's grievance. *Disciplinary Proceedings Against Grapsas*, 225 Wis. 2d 411, 591 N.W.2d 862 (1999).

¶ 6. The referee in the instant matter, Attorney Linda Balisle, made findings of fact concerning Attorney Grapsas's representation of a client who retained him in October 1994 to file an application for permanent residency in the United States. The client, a citizen of Nigeria, had nonimmigrant status as a teacher of French at a private secondary school in Indiana, and when she retained him or soon thereafter, she told Attorney Grapsas she had three minor children, one of whom had been born in Nigeria and was admitted into this country on dependent status.

¶ 7. Like her mother, the non-citizen child would require an extension of INS authorization in order to continue residing lawfully in this country beyond the expiration date of her current status. However, when he filed a petition with INS to extend his client's nonimmigrant status on May 16, 1995, Attorney Grapsas did not ask INS to extend her daughter's dependent status. He also did not advise his client that the child's dependent status would not be extended automatically upon the extension of her own nonimmigrant status.

¶ 8. By July 1995, the client had supplied Attorney Grapsas all of the information necessary for him to complete the Application for Alien Employment Certification, which was the first of four steps in applying for permanent residency. Attorney Grapsas prepared that application sometime during the summer or fall of 1995, and the client executed and returned it to him, assuming he would file it promptly with the appropri-

ate governmental agencies. At that time, the processing of such an application in Indiana, where the client resided, took approximately 200 days, from the date of filing through the second step in the process—review and decision by the U.S. Department of Labor.

¶ 9. Attorney Grapsas never told his client he did not intend to file the application promptly, nor did he ever discuss with her any strategic reason why it should not be filed immediately. From November 1995 through the summer of 1996, the client periodically contacted or attempted to contact Attorney Grapsas by telephone concerning the status of the application. Attorney Grapsas did not return many of her telephone calls, but on one occasion when the client spoke with him, he told her the process would take a long time and assured her he would check into the matter. During those contacts with the client, Attorney Grapsas never told her that in fact he had not filed the application, and his statements to the effect that he would check into the matter led the client to believe he had filed it and was awaiting response.

¶ 10. When the client reminded him in August 1996, that her current visa would expire in one year, Attorney Grapsas responded that he would check the status of the application and let her know how the matter was progressing. He again did not tell her that he had not filed the application. The client's concern about her immigration status heightened in early 1997, and when she called Attorney Grapsas to remind him that only six months remained on her visa, Attorney Grapsas told her she could not continue her employment if her status expired and suggested that she go to Canada to find employment.

¶ 11.   On February 21, 1997, the client told Attor-
ney Grapsas she had spoken with an official at her
school to see if there was something they could do to
speed up the application process and that her employer
was going to contact a state senator to find out why it
was taking fifteen months to process her application.
When she asked him for the name and telephone num-
ber of the person at the Indiana agency handling the
case, Attorney Grapsas said he did not have the infor-
mation with him but would send it to her within three
days, but he did not do so, even when the client tele-
phoned him two days later to remind him that she
needed that information. During all of those telephone
conversations, Attorney Grapsas never told his client
he had not filed the application with the Indiana
agency.

¶ 12.   Almost immediately thereafter, however,
Attorney Grapsas sent the application by express mail
on February 24, 1997, and on the following day told his
client she should expect a letter from the appropriate
department that week. Prior to filing it, Attorney Grap-
sas altered the dates on the application in order to
make it appear that the client and her employer had
signed it on November 14, 1996, rather than a year
earlier, as they in fact had done. Attorney Grapsas
never spoke with his client or her employer about alter-
ing the dates of their signatures, nor had he obtained
their authorization to do so.

¶ 13.   During the disciplinary proceeding, Attor-
ney Grapsas asserted that a general shutdown in
federal government operations had produced a large
backlog of permanent residency applications, and he
claimed that he had delayed filing the client's applica-
tion because he was awaiting the Department of
Labor's determination whether persons who had not

759

yet filed would be given a separate processing channel to expedite their applications. However, Attorney Grapsas provided no information indicating any proposals with INS or the Department of Labor during 1995 or 1996 to change the processing of applications in order to give priority to those who had not filed or to create a separate process for them.

¶ 14. Regarding the nonimmigrant status of the client's daughter, the referee found that when she sought an extension of her own status in May 1995, the client did not know she would have to file a separate application to extend her daughter's dependent status and expected Attorney Grapsas to advise her if an application were needed. Attorney Grapsas never asked whether his client knew the procedure to be followed to keep her daughter in dependent status.

¶ 15. The client learned sometime in 1996 that her daughter's visa status had not been extended when her own nonimmigrant status was extended in May 1995. When she discovered that the daughter's status had expired, the client contacted Attorney Grapsas, who told her they would need to file an extension application with INS. He filed that application on or about March 10, 1997, and INS denied it May 1, 1997, and sent notice of that denial to Attorney Grapsas to forward to the client's daughter. Attorney Grapsas did not notify either the client or her daughter that the application had been denied until June 3, 1997, when the client contacted him. In the ensuing conversation, Attorney Grapsas told her he had received the notice denying the application about one week earlier. When she asked why he had not sent her a copy of the decision denying the application, Attorney Grapsas told her, "There wasn't anything you could do about it anyway."

¶ 16.    In March 1997, the client terminated Attorney Grapsas's representation and retained another attorney to complete the permanent residency process for her. Early the following June, the client wrote Attorney Grapsas of her dissatisfaction with his representation of her and her daughter. By return letter, Attorney Grapsas, while disputing some of her statements, agreed to return the $1,000 retainer the client had paid him for his services. He then repaid $200 to the client but made no additional payments after the client filed a grievance against him with the Board.

¶ 17.    When an investigation into his conduct in this matter was initiated, Attorney Grapsas did not provide timely response to either the Board's first or second letter. He neither gave a reason for not responding timely nor requested additional time to respond.

¶ 18.    On the basis of the facts found, the referee concluded that Attorney Grapsas engaged in the following professional misconduct. By failing to file the client's application for fifteen months after she had returned it to him in a form ready to be filed, Attorney Grapsas violated SCR 20:1.3,[2] which requires a lawyer to act with reasonable diligence and promptness in representing a client. He violated SCR 20:1.4(a)[3] by failing to keep the client adequately informed of the status of her application and respond promptly to her requests for information concerning it. By failing to notify his

---

[2] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] SCR 20:1.4(a) provides:

(a)   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

client and her daughter promptly of the INS denial of the daughter's application to extend her visa status, Attorney Grapsas violated SCR 20:1.4(a), and by failing to advise the client of the steps necessary to continue her daughter's nonimmigrant status when he filed the client's request for an extension of her status in May 1995, he violated SCR 20:1.4(b),[4] which requires a lawyer to explain a matter to a client to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

¶ 19. The referee also concluded that by representing to the client between November 1995 and late February 1997 that he had filed the application for her, when in fact he had not, Attorney Grapsas engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).[5] He violated that same provision by altering without the client's knowledge or authorization the dates of the signatures of the client and her employer on the application he filed. His failure to respond timely to the Board's inquiries violated SCR 22.07(2) and (3),[6] and his failure

---

[4] SCR 20:1.4(b) provides:

(b)   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . .

[6] SCR 22.07(2) and (3) provide:

(2)   During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts

to return the client's retainer in full violated SCR 20:1.16(d),[7] which requires a lawyer, upon termination of representation, to take steps to the extent reasonably practicable to protect the client's interests—here, to return the client's retainer so that she could retain new counsel.

¶ 20. As discipline for that misconduct, the referee recommended that, at a minimum, the court suspend Attorney Grapsas's license to practice law for six months and order him to make full restitution to the client. That recommendation was based on the referee's finding that while he acknowledged the facts she had found, Attorney Grapsas believed that his only misconduct was not keeping his client adequately informed of her legal matter. The referee found further that Attorney Grapsas did not demonstrate any

---

and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

[7] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

remorse for his misconduct or for the peril in which he placed both the client and her daughter with the INS; instead, he continued to maintain that his conduct was justified by various untenable legal theories. The referee said, "Grapsas's willingness to misrepresent to his client the status of her matter and to justify clearly negligent actions on unfounded legal theory and strategy and his total lack of remorse for actions which threatened deportation of his client and her child warrant substantial discipline."

¶ 21.  The referee expressed concern that Attorney Grapsas's conduct in the instant proceeding and in the prior disciplinary proceedings suggest that he will not alter his conduct in the future. She noted the particular vulnerability of immigration clients, who would be unlikely to know whether an attorney's license ever had been suspended for misconduct in matters similar to theirs, and the potentially disastrous effects of his misconduct on them.

¶ 22.  Notwithstanding her stated belief that he does not appear to lack the knowledge of proper procedure in immigration cases, such that he might benefit from a requirement to attend specific continuing legal education programs, the referee recommended that, as conditions for reinstatement of his license, Attorney Grapsas be required to attend continuing legal education courses related to subjects he intends to continue practicing and that he demonstrate an understanding of the relationship of his conduct to the consequences suffered by his client in the instant matter and to the public's perception of the legal profession.

¶ 23.  In this appeal, Attorney Grapsas put forth the same arguments he had made unsuccessfully to the referee. He persisted in contending that he was under no professional obligation to provide his client with

advice and counsel in respect to the dependent status of her daughter, asserting that under immigration law, an attorney-client relationship does not arise until the client's name is entered on a form by which the attorney enters an appearance in the matter. He also reasserted his position that he had advised his client that if she wanted his assistance in respect to her daughter, a separate application for change of status would have to be completed and that the client responded that she would see to the matter herself.

¶ 24. The referee properly rejected those arguments. On the issue of what the client told Attorney Grapsas about her daughter's status and expected him to do about it, the referee found the client's testimony credible. Also, it was undisputed that Attorney Grapsas knew the client's daughter was an alien residing in this country on dependent status but did not counsel his client about the need to file a separate extension application for the daughter at the time he prepared and filed an extension application for the client. Moreover, Attorney Grapsas admitted that he did not inform his client that her daughter's dependent status would not be extended automatically upon the extension of her own and did nothing to learn if the client was aware of what needed to be done or ask the client what she had done for the daughter.

¶ 25. Defending his delay in filing the client's Application for Alien Employment Certification, Attorney Grapsas insisted that it was a strategic decision designed to allow him to monitor the way in which the Department of Labor was processing those applications in the face of a substantial backlog. Accordingly, he argued, he withheld filing the client's application in order to learn if any exceptions would be made for new applications so that they would not be placed at the

bottom of the backlog but instead be given preferential treatment.

¶ 26. The referee considered those defenses an attempt "to justify clearly negligent actions on unfounded legal theory and strategy." We agree. During the many telephone calls from the client inquiring into the status of her application, Attorney Grapsas never told her he was delaying the filing for any reason, strategic or otherwise; instead, he led her to believe that he was waiting to hear from the governmental agency concerning the application and was speaking regularly with the authorities regarding it. Even after he learned from an October 16, 1996, Department of Labor announcement that no applications would be expedited under any circumstances, Attorney Grapsas did not file the client's application until more than four months later, and then only after the client insisted that he give her the file number of the application and the name of the person at the state agency he was dealing with so she could pursue the matter herself. Even the message he sent the client the day after he filed the application was misleading, as it did not mention the filing he just made but stated merely that the client should expect to receive a letter soon from the state agency regarding the application.

¶ 27. We are concerned that, notwithstanding those facts, Attorney Grapsas continued to contend in his briefs and at oral argument that his misconduct in this matter consisted, at most, of a failure to keep his client properly informed of the progress of her legal matter. His insistence that he never misrepresented to the client that he had filed her application or engaged in misrepresentation by altering the dates on the forms prior to filing the application suggests that he is either unable or unwilling to understand and accept responsi-

bility for his misconduct. His contention that as an attorney he was authorized to alter the dates on the forms in order to "bring them up to date," without first contacting the client and the employer to ascertain whether the information on those forms was still accurate and obtaining their consent to the change of date, is disturbingly disingenuous.

¶ 28. Finally, there is no merit to Attorney Grapsas's assertion that he did not fail to cooperate in the Board's investigation into his conduct by not responding to its inquiries within the time required. The Board's letters were dated July 16 and August 14, 1997; the first required a response within 20 days, the second within 10 days. Attorney Grapsas's written response was sent October 13, 1997. Yet, he insisted that he did not fail to cooperate with the Board but merely delayed his response.

¶ 29. The referee's findings of fact and conclusions of law regarding Attorney Grapsas's professional misconduct established in this proceeding are proper, and we adopt them. While the referee stated that the repetitive nature of that misconduct, its potentially disastrous effect on vulnerable clients, and the fact that no further legal education or discipline is apt to alter his behavior require that revocation of Attorney Grapsas's license to practice law be considered, we determine that a six-month license suspension, which was sought by the Board and will require a full reinstatement proceeding and order of the court, is the appropriate discipline to impose. In addition, we will require that Attorney Grapsas repay his client in full the retainer she gave him for the representation she sought, but we decline the referee's recommendation to impose an unspecified continuing legal education condition on reinstatement of his license. We are satisfied

that the continuing legal education requirement imposed by court rule on all attorneys is adequate under the circumstances. We note that as a part of the reinstatement proceeding, Attorney Grapsas will have to satisfy the court that he understands his professional obligations and will comply with the rules applicable to attorney professional conduct.

¶ 30. IT IS ORDERED that the license of Nicholas C. Grapsas to practice law in Wisconsin is suspended for six months, commencing January 10, 2000, as discipline for professional misconduct.

¶ 31. IT IS FURTHER ORDERED that within 60 days of the date of this order he make restitution as specified herein.

¶ 32. IT IS FURTHER ORDERED that within 60 days of the date of this order, Nicholas C. Grapsas, pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Nicholas C. Grapsas to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 33. IT IS FURTHER ORDERED that Nicholas C. Grapsas comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.