In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Nicholas C. GRAPSAS, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant,

v.

Nicholas C. GRAPSAS, Respondent.

Supreme Court

*No. 00–1599–D. Filed March 7, 2001.*

2001 WI 14

(Also reported in 622 N.W.2d 750.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Nicholas C. Grapsas and the Board of Attorneys Professional Responsibility (Board).[1] Pursuant to SCR 21.09(3m)[2] and the report and recommendations of the referee,[3] Cheryl Rosen Wes-

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation and the supreme court rules applicable to the lawyer regulation system were also revised. Since the conduct underlying this case arose prior to October 1, 2000, the body will be referred to as "the Board" and all references to supreme court rules will be to those in effect prior to October 1, 2000.

[2] Former SCR 21.09(3m) provided:

(3m) The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

[3] Although former SCR 21.09(3m) did not seem to contemplate that a stipulated matter be referred to a referee unless the supreme court rejected the stipulation, the stipulation entered into between the Board and Attorney Grapsas did provide that

ton, setting forth findings of fact and conclusions of law concerning Attorney Grapsas' professional misconduct for failing to provide competent representation to a client; failing to act with reasonable diligence and promptness in representing a client; making false and misleading statements to a client; making false statements to Board staff; failing to promptly notify a court of a prior suspension of his license to practice law; engaging in the practice of law while suspended; and failing to respond to letters from the Board; the parties stipulated, and the referee recommended, that Attorney Grapsas' license to practice law be revoked as a discipline for that misconduct.

¶ 2. We approve the stipulation and determine that the seriousness of Attorney Grapsas' misconduct warrants revocation of his license to practice law in Wisconsin.

¶ 3. Attorney Grapsas was admitted to practice law in Wisconsin in 1970 and practiced in Madison, primarily in the area of immigration law. In 1993 this court publicly reprimanded him for failing to provide prompt and diligent representation to a client applying for U.S. citizenship, failing to keep that client reasonably informed of the status of the application and comply with her reasonable requests for information concerning it, refusing to return her unearned retainer when she terminated his representation, misrepresenting to his client, the Board, and the District Professional Responsibility Committee that he had acted in the client's matter, and failing to respond timely to the Board's request for information concerning the client's

---

the matter be referred to a referee for entry of findings of fact and conclusions of law consistent with the allegations of the Board's complaint.

grievance. *Disciplinary Proceedings Against Grapsas,* 174 Wis. 2d 816, 498 N.W.2d 400 (1993).

¶ 4. In March of 1999 this court again publicly reprimanded Attorney Grapsas for not explaining an immigration matter to a client to the extent reasonably necessary to permit her to make informed decisions regarding the representation and not informing her and her employer of substantial risks to the client's ability to work after the expiration date of the visa, failing to make reasonable inquiries to the Immigration and Naturalization Service (INS) concerning his attempt to file a petition to change the client's status, not refiling the petition in a timely manner, and not responding to inquiries from the Board concerning the client's grievance. *Disciplinary Proceedings Against Grapsas,* 225 Wis. 2d 411, 591 N.W.2d 862 (1999).

¶ 5. In December of 1999 this court suspended Attorney Grapsas' license to practice law in Wisconsin for six months, commencing January 10, 2000, for failing to file a client's application with INS in a timely manner, failing to keep the client adequately informed of the status of that application and respond promptly to her reasonable requests for information concerning it, misrepresenting to the client on numerous occasions over an extended period that he had filed the application, altering the dates of the signature of the client and her employer on the application without obtaining their authorization to do so, failing to advise the client of the steps necessary to continue her daughter's nonimmigrant status and notify the client and her daughter promptly of the denial of the application to extend the daughter's visa, failing to return the balance of the client's retainer, and failing to timely respond to letters from the Board inquiring into his conduct in the mat-

577

ter. *Disciplinary Proceedings Against Grapsas*, 230 Wis. 2d 751, 602 N.W.2d 526 (1999).

¶ 6. The Board's most recent complaint against Attorney Grapsas involves two of his former clients. In 1995 the first client, a native and citizen of the African nation of Cameroon, retained Attorney Grapsas to assist him in applying for political asylum in the United States. On December 28, 1995, INS granted the client's application for political asylum and, as a result, the client was granted status as an asylee in the United States. Subsequent to INS granting the client's application for political asylum, Attorney Grapsas also assisted the client in obtaining employment authorization from INS, pursuant to which the client was authorized to be employed in the United States for a one-year period. As an alien admitted to the United States under asylee status, the client could not lawfully be employed in the United States except under an employment authorization. The unlawful employment of an alien such as the client, even if otherwise lawfully admitted to the United States, provides legal grounds for deportation.

¶ 7. In June of 1996 the client traveled to Canada to investigate possible employment opportunities. Upon his re-entry into the United States in August of 1996 INS issued an "Order to Appear Deferred Inspection" and admitted the client to return into the United States under "parolee" status. The order required the client to appear before INS for a hearing in Milwaukee on September 16, 1996. This matter is called an "exclusion proceeding."

¶ 8. Attorney Grapsas appeared as counsel for the client at the September 1996 hearing in the exclusion proceeding. Following the hearing INS notified the client that a further hearing would be conducted before

an immigration judge at a time and date to be set. While this matter was pending Attorney Grapsas told the client he could be lawfully employed in the United States and assisted the client in applying to seek renewal of his employment authorization. As a result of a renewal application filed with Attorney Grapsas' assistance, INS renewed the client's employment authorization card for a one-year period extending from February 13, 1997, to February 13, 1998, and INS issued the client an employment authorization card to evidence his employment authorization for that period.

¶ 9. In December of 1997 while the exclusion proceeding was still pending Attorney Grapsas advised the client to apply to INS to renew his employment authorization. Attorney Grapsas prepared an application for renewal of employment authorization, which the client executed in late December 1997. In the renewal application, Attorney Grapsas described the client's current immigration status as an "asylee." The client paid Attorney Grapsas for legal services rendered in connection with the renewal application. Following the execution of the renewal application Attorney Grapsas informed the client that the application had been sent to INS by Federal Express.

¶ 10. On January 6, 1998, the immigration judge entered an order terminating the exclusion proceeding. Following the entry of that order, Attorney Grapsas informed the client that he was free to file for admission to the United States as a permanent resident. In late April 1998 the client executed an application for permanent residence status which Attorney Grapsas had prepared. The client paid Attorney Grapsas $175 for the filing fee and $50 for attorney fees for his services. Attorney Grapsas told the client the permanent residence application would be filed immediately.

Beginning in the summer of 1998 the client attempted to contact Attorney Grapsas to request information about the status of the renewal application and the permanent residence application, but Attorney Grapsas did not respond to the client's requests for information.

¶ 11. During 1998 because he did not have a current employment authorization card issued by INS, the client was unable to obtain employment in the United States since the card in his possession had expired February 13, 1998. During the fall of 1998 a prospective employer of the client had contact with Attorney Grapsas regarding the client's immigration status. In an October 1998 letter to the prospective client, Attorney Grapsas said the client had been granted the immigration status of an asylee and that any person with that status was authorized to work. Attorney Grapsas also informed the prospective employer that the client had applied to INS for renewal of the document to evidence his employment authorization.

¶ 12. In early November 1998 the client sent Attorney Grapsas a letter by certified mail inquiring about the status of his employment authorization application. Although Attorney Grapsas received the letter on November 12, 1998, he failed to respond. In early December 1998 the client faxed Attorney Grapsas a letter saying he needed help because his employer had asked for proof of his employment authorization. Attorney Grapsas again failed to respond.

¶ 13. In late December 1998 Attorney Grapsas finally telephoned the client and told him he had filed another application to renew the client's employment authorization. Attorney Grapsas provided no information concerning what had happened to the purported December 1997 renewal application. In early January

1999 the client faxed Attorney Grapsas a letter asking for a copy of the most recent renewal application. The client also inquired about the status of the permanent residence application. Attorney Grapsas failed to respond. In March of 1999 the client learned that, contrary to his prior representations, Attorney Grapsas had not filed the renewal application or the permanent residence application.

¶ 14. The client was required to obtain new counsel to assist him in filing a new renewal application and a new permanent residence application. On July 8, 1999, the client received from INS a one-year employment application authorization and employment authorization card. Because the permanent residence application had not been timely filed by Attorney Grapsas, the client was required to incur additional costs of $237 for a medical examination, fingerprinting and a photograph.

¶ 15. In his communications with the Board, Attorney Grapsas claimed he did not file the renewal application and permanent residence application because the client's immigration status was unsettled, despite the termination of the exclusion proceeding in January of 1998.

¶ 16. The Board's complaint also alleged that Attorney Grapsas engaged in misconduct with respect to an immigration hearing that took place in January 2000. After this court issued its December 3, 1999, decision suspending Attorney Grapsas' license for six months, Attorney Grapsas filed a motion for reconsideration. By letter dated January 12, 2000, the Board reminded Attorney Grapsas that his filing of the reconsideration motion did not stay the enforcement of this court's disciplinary order, pursuant to which Attorney Grapsas' license to practice law was suspended for six

months effective January 10, 2000. On January 13, 2000, this court issued an order denying Attorney Grapsas' motion for reconsideration.

¶ 17. On January 18, 2000, Attorney Grapsas spoke by telephone with the Board's litigation counsel inquiring about a client matter scheduled for an immigration hearing in Chicago on January 20, 2000. Board counsel reminded Attorney Grapsas that because of the suspension order he could not appear at the hearing, could not practice law in any way, and could not engage in any work activity customarily done by law students, law clerks, or other legal personnel. Board counsel further advised Attorney Grapsas that it appeared the January 20, 2000, hearing would have to be adjourned and that, in any event, the court and his client would have to be notified of the suspension and his client should be given the opportunity to retain new counsel.

¶ 18. Despite his conversation with Board counsel, Attorney Grapsas appeared before the immigration court on January 20, 2000, as counsel representing an alien client. At that time in response to a motion filed by Attorney Grapsas, the immigration court entered an order terminating deportation proceedings against the client.

¶ 19. On February 3, 2000, the Board notified Attorney Grapsas that it had received information concerning his appearance before the immigration court. Attorney Grapsas represented to Board counsel that his only activity before the immigration court had consisted of his notifying the court and his client of his license suspension. By letter dated February 18, 2000, the Board provided Attorney Grapsas with notice of the commencement of an investigation based upon information received from the immigration judge about Attorney Grapsas' appearance before the immigration

court on January 20, 2000. The letter directed Attorney Grapsas to provide a written response to the issues raised by the submission received from the immigration judge within 20 days of his receipt of the letter. Attorney Grapsas failed to respond to the Board's letter. In a certified letter dated March 21, 2000, the Board again notified Attorney Grapsas of its commencement of an investigation about his appearance before the immigration court and directed Attorney Grapsas to provide a written response no later than March 31, 2000. Again, Attorney Grapsas failed to respond.

¶ 20. In the stipulation, Attorney Grapsas represented to the Board, the referee, and this court that he had retired from the practice of law and had no intention of resuming the practice of law; that he did not contest the allegations of professional misconduct set forth in the complaint; and that he knowingly and voluntarily stipulated to the revocation of his license to practice law.

¶ 21. The referee found that by failing to take action to promptly file the renewal application and the permanent residence application for the first client, or by failing to promptly take action to resolve any issues as to that client's allegedly unsettled immigration status, so that the applications could be promptly filed and acted upon by government authorities, Attorney Grapsas violated SCR 20:1.1 and 20:1.3.[4]

---

[4] SCR 20:1.1 provides:

Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

SCR 20:1.3 provides:

¶ 22. The referee also concluded that by failing to respond to the first client's reasonable request for information about the status of the renewal application and the permanent residence application, Attorney Grapsas violated SCR 20:1.4(a).[5] The referee also found that by making false and misleading statements to the first client about the renewal application and permanent residence application; by falsely stating to the client's prospective employer that the client had filed with INS an application for renewal of his employment authorization; and by falsely stating to the Board's counsel that his only activity before the immigration court on January 20, 2000, consisted of notifying the court and his client of the license suspension, Attorney Grapsas violated SCR 20:8.4(c).[6]

¶ 23. The referee also found that by falsely stating to Board staff that the renewal application and the permanent residence application had been filed with INS and by failing to respond to the Board's letters and by falsely stating that his only activity before the immigration court consisted of notifying the court and his client of the license suspension, Attorney Grapsas violated SCR 21.03(4) and 22.07(3).[7] In addition, the

Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

[5] SCR 20:1.4(a) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[6] SCR 20:8.4(c) provides:

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[7] Former SCR 21.03(4) provided:

referee found that by failing to promptly notify the immigration court of his suspension and of his inability to act as counsel for a client at the January 20, 2000, hearing, and by engaging in the practice of law while suspended, Attorney Grapsas violated SCR 22.26.[8]

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

Former SCR 22.07(3) provided:

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

[8] Former SCR 22.26 provided:

Activities on revocation or suspension of license

(1)(a) A disbarred or suspended attorney on or before the effective date of disbarment or suspension shall:

1. Notify, by certified mail, all clients being represented in pending matters of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension.

2. Advise the clients to seek legal advice of the client's own choice elsewhere.

(b) A disbarred or suspended attorney with a matter pending before a court or administrative agency shall promptly notify the court or administrative agency and the attorney for each party of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension. The notice must identify the successor attorney or, if there is none at the time of the notice, state the place of residence of the client of the disbarred or suspended attorney.

(2) A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

585

(3) A suspended or disbarred attorney shall make within the first 15 days after the effective date of disbarment or suspension, all arrangements for the permanent or temporary closing of or winding up of the attorney's practice and may only aid in having others take over clients' work in process. If a suspended or disbarred attorney disappears or dies and the attorney has failed to comply with this subsection and no partner, personal representative or other responsible party capable of conducting the attorney's affairs is known to exist, a judge of a court of record in a county in which the attorney maintained an office shall appoint an attorney to enter the former offices of the disbarred or suspended attorney or other location as may be necessary for the sole purpose of protecting the client's rights, the clients' files and the clients' property, and the delivery thereof to the clients or their successor counsel. The appointed attorney may be compensated out of the assets of the suspended or disbarred attorney in the amount approved by the judge.

(4) The disbarred or suspended attorney shall file with the administrator within 25 days after the effective date of the disbarment or suspension order, an affidavit showing:

(a) Full compliance with the provisions of the order and with the rules and procedures.

(b) All other state, federal and administrative bodies before which the attorney is admitted to practice.

(c) A list of all clients in pending matters, and a list of all matters pending before any court or administrative agency and the case number.

(d) A disbarred or suspended attorney shall maintain records of the various steps taken under the rules and these procedures so that, upon any subsequent proceeding instituted by or against the attorney, proof of compliance with the rules and these procedures and with the disbarment or suspension order is available. Proof of compliance with these procedures is a condition precedent to reinstatement.

(5) The administrator shall have published a notice of the suspension or disbarment in the Wisconsin bar bulletin and in a newspaper of general circulation in each county in which the disbarred or suspended attorney maintained an office for the practice of law.

(6) The administrator shall notify all judges in this state of the order of suspension or disbarment.

entry of an order of restitution to the first client in the sum of $574. The parties noted that Attorney Grapsas has transmitted such funds to the Board's counsel and the funds are being held in the trust account of Lee Kilkelly Paulson & Younger, S.C., to be distributed to the former client from such account upon this court's final disposition in the matter.

¶ 25. We accept the parties' stipulation and adopt the referee's findings of fact and conclusions of law. Attorney Grapsas' pattern of misconduct in the handling of his client's immigration matters warrants the revocation of his license to practice law in Wisconsin.

¶ 26. IT IS ORDERED that the license of Nicholas C. Grapsas to practice law in Wisconsin is revoked effective the date of this order.

¶ 27. IT IS FURTHER ORDERED that Nicholas C. Grapsas comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

---

(7) Nonpermitted activities of other lawyers. A member of the bar of this state may not use the name of a disbarred or suspended lawyer and may not authorize or knowingly permit a disbarred or suspended lawyer to:

(a) Interview clients or witnesses or participate therein, except that in the course of employment by a commercial employer he or she may interview witnesses and participate in the investigation of claims;

(b) Prepare cases for trial;

(c) Do any legal research or other law work activity in a law office;

(d) Write briefs or trial memoranda; or

(e) Perform any services for him or her either on a salary or a percentage or a fee-splitting basis, except that he or she may share attorney fees on a quantum meruit basis only for services performed prior to disbarment or suspension;

(f) An attorney shall not permit a disbarred or suspended attorney to engage in any activity prohibited by this rule.

¶ 28. IT IS FURTHER ORDERED that the sum of $574 which is held in the trust account of Lee Kilkelly Paulson & Younger, S.C. be disbursed to Nicholas C. Grapsas' former client.

¶ 29. IT IS FURTHER ORDERED that within 60 days of the date of this order Nicholas C. Grapsas pay to the Office of Lawyer Regulation the sum of $200 as the costs of this proceeding.[9]

¶ 30. WILLIAM A. BABLITCH, J., did not participate.

---

[9] Although the stipulation and the referee's report both provided that costs be waived, this court has determined that the seriousness of Attorney Grapsas' misconduct warrants the imposition of some amount of costs.