In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Alan D. EISENBERG, Attorney at Law:

OFFICE OF LAWYER REGULATION, f/k/a Board of Attorneys Professional Responsibility, Complainant-Respondent,

v.

Alan D. EISENBERG, Respondent-Appellant.

Supreme Court

*No. 02–0386–D. Oral argument January 27, 2004.—Decided March 2, 2004.*

2004 WI 14

(Also reported in 675 N.W.2d 747.)

For the respondent-appellant there were briefs by *Richard J. Cayo, Christopher T. Kolb* and *Halling & Cayo, S.C.,* Milwaukee, and oral argument by *Richard J. Cayo* and *Alan D. Eisenberg.*

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy, Haas & Robinson, LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. We review the findings of fact, conclusions of law, and recommendations of Referee Timothy L. Vocke for sanctions pursuant to SCR 22.17(1) and (3).[1] Attorney Alan D. Eisenberg was found to have engaged in unprofessional conduct in the course of his practice of law in violation of the Rules of Professional Conduct. The referee recommended revo-

---

[1] SCR 22.17(1) and (3) provide:

(1) Within 20 days after the filing of the referee's report, the director or the respondent may file with the supreme court an appeal from the referee's report.

(3) An appeal from the report of a referee is conducted under the rules governing civil appeals to the supreme court. The supreme court shall place the appeal on its first assignment of cases after the briefs are filed.

cation of Attorney Eisenberg's license to practice law and the payment of the costs of the Office of Lawyer Regulation (OLR).[2]

¶ 2. We approve the findings and conclusions of the referee and determine that the seriousness of Attorney Eisenberg's misconduct warrants the imposition of a sanction. However, we do not follow the referee's recommendation as to the sanction and instead impose a one-year suspension of Attorney Eisenberg's license to practice law.

¶ 3. Attorney Eisenberg was licensed to practice law in Wisconsin in 1966. In 1970 he was suspended from the practice of law for one year for vindictive and reckless harassment of a judge. *See State v. Eisenberg,* 48 Wis. 2d 364, 180 N.W.2d 529 (1970). In 1988 he was suspended from the practice of law for two years for conflict of interest, offensive personality, and dishonesty, fraud, deceit, and misrepresentation. *See In re Disciplinary Proceedings Against Eisenberg,* 144 Wis. 2d 284, 423 N.W.2d 867 (1988). In 1996 he received a public reprimand for activity occurring during the 1988 suspension consisting of a failure to close out a trust account and failing to advise the Board of Attorneys Professional Responsibility upon his reinstatement that he had not closed the account.

---

[2] Effective October 1, 2000, Wisconsin's attorney disciplinary process was substantially restructured. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility to the Office of Lawyer Regulation (OLR) and the supreme court rules applicable to the lawyer regulation system were also revised in part. However, all references to supreme court rules will be to those currently in effect unless otherwise indicated.

¶ 4. On February 8, 2002, the OLR issued a complaint against Attorney Eisenberg alleging eight counts in violation of the Rules of Professional Conduct. These counts involved five separate matters. Attorney Eisenberg answered the complaint and proceedings before the referee followed.

¶ 5. The standard of review before this court is that the referee's findings of fact are affirmed unless clearly erroneous but conclusions of law are reviewed on a de novo basis. *See In re Disciplinary Proceedings Against Kalal,* 2002 WI 45, 252 Wis. 2d 261, 643 N.W.2d 466. The referee's credibility determinations are intertwined with his findings of fact. *See In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1993).

## DIVORCE RETAINER AND FILE

¶ 6. Count One alleges a violation of SCR 20:1.16(d) (upon termination of representation the lawyer must take steps to protect the client's interests).[3] Count Two alleges a violation of former SCR 22.07(2) (an attorney has to disclose all relevant information to

---

[3] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law

the OLR),[4] and SCR 20:8.4(c) (prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation).[5]

¶ 7. These two counts involve B.S., a divorce client, who elected to have one of Attorney Eisenberg's associates continue to represent her after that attorney left his firm. However, there was a dispute between the two attorneys on how much of the $5000 retainer should be forwarded on along with the file. The associate claimed $2775.69 of the retainer was unearned whereas Attorney Eisenberg claimed that all of the retainer had already been earned by his office. Attorney Eisenberg signed an affidavit seeking the entire retainer plus additional funds which he presented to the Milwaukee County Circuit Court presiding over the divorce. That court did not take action to resolve the fee dispute.

¶ 8. The referee took testimony on these counts from Attorney Eisenberg, his legal secretary, another of his employees, and the former attorney. Based on this testimony the referee found that Attorney Eisenberg had his staff "fabricate . . . bogus billings" which he

---

[4] Former SCR 22.07(2) provided:

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

47

incorporated into his court affidavit and which misrepresented the amount of the retainer that was earned. The referee also found that he failed to timely surrender the divorce file and the unearned retainer to the former associate.

¶ 9. Accordingly, the referee concluded as a matter of law that Attorney Eisenberg had violated the rules specified in the two counts.

¶ 10. In defense, which the referee rejected, Attorney Eisenberg claimed that: (1) the associate's testimony should not have been deemed credible; (2) the referee should have given greater weight to the testimony of his secretary who testified that she made a good faith effort at reconstructing the billings; and (3) while it was accurate to characterize the recreation of billings as a "guesstimate" this did not rise to the level of a fabrication.

¶ 11. We adopt the findings of fact and conclusions of law of the referee with respect to these two counts. Although mindful of Attorney Eisenberg's defense, we cannot conclude that the referee's findings, particularly since they rely heavily on the credibility of the witnesses, are clearly erroneous. Furthermore, assuming the findings to be accurate, they clearly support the conclusion that there was a violation of the rules specified in these two counts.

## PRO HAC VICE APPLICATION

¶ 12. Count Three alleges that Attorney Eisenberg again violated SCR 20:8.4(c). Count Four alleges a

48

violation of SCR 20:3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact to a tribunal).[6]

¶ 13. These counts arose out of an incident in which Attorney Eisenberg submitted an affidavit in support of an application to appear pro hac vice in California which indicated he had never been previously suspended from legal practice. The referee took testimony from Attorney Eisenberg, his secretary, and the California attorney who had prepared the affidavit and faxed it to Attorney Eisenberg's office.

¶ 14. The testimony of the three indicated that California rules only required an attorney to verify that he was not currently under suspension, although the application and affidavit prepared by the California attorney did require Eisenberg to verify whether he had ever been suspended or disbarred by any court. The secretary testified that she took the application and affidavit into Attorney Eisenberg's office, he was busy with another matter, and only a few minutes were spent in the process of having him sign it. Attorney Eisenberg conceded that he should have read the application and affidavit before signing it but contended that he was busy and it was simply an inadvertent error and he did not intentionally misrepresent his disciplinary history.

¶ 15. However, the referee found that since Attorney Eisenberg regularly has appeared on a pro hac vice basis in other states, he should have known the importance of accuracy in this application process. He did not find Attorney Eisenberg's testimony to be credible and stated that his claim of inadvertent error "rings hollow and is absolutely unbelievable" and therefore "actual dishonesty and deceit" was involved. Accordingly, the

---

[6] SCR 20:3.3(a)(1) provides: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal."

referee further concluded as a matter of law that there was a violation on both counts.

¶ 16. In reviewing the record of this matter, we concede that there is no direct evidence of an intent to misrepresent. We further concede the possibility that a different trier of fact might have reached different findings and conclusions on this matter. However, the law typically recognizes that it is unable to look into a person's mind to find intent and it must be determined from the person's acts and words and the circumstances of the situation. We also are constrained by the clearly erroneous standard and cannot conclude that the referee's findings and conclusions, based heavily on his assessment of Attorney Eisenberg's lack of credibility, meets the standard. Accordingly, we adopt the referee's findings of fact and conclusions of law with respect to these counts.

## DEPARTMENT OF TRANSPORTATION HEARING

¶ 17. Count Six[7] involves a violation of SCR 20:3.5(c) (a lawyer shall not engage in conduct intending to disrupt a tribunal)[8] and SCR 20:3.9 (appearances before administrative tribunals are covered under SCR 20:3.5(c)).[9] Count Seven alleges a violation of SCR 20:8.4(g) (attorney shall not violate the attorney's

---

[7] The OLR had originally alleged a Count Five involving a media disclosure matter but voluntarily dismissed it prior to the disciplinary hearing.

[8] SCR 20:3.5(c) provides: "A lawyer shall not: (c) engage in conduct intended to disrupt a tribunal."

[9] SCR 20:3.9 provides: "Advocate in nonadjudicative proceedings. A lawyer representing a client before a legislative or administrative tribunal in a nonadjudicative proceeding shall

oath),[10] and SCR 40.15 (that portion of the attorney's oath which requires abstention from all offensive personality).[11]

¶ 18. These two counts arise out of Attorney Eisenberg's appearance before a Wisconsin Department of Transportation hearing examiner in which he is alleged to have essentially taken over the hearing, refused to obey the procedural rules of the tribunal, and then left with his client before the hearing was over, all deemed to be conduct intending to disrupt the hearing.

¶ 19. The referee took testimony from the hearing examiner and Attorney Eisenberg, and also admitted into evidence the tape of the hearing. The referee concluded that Attorney Eisenberg was "rude, abusive, controlling, disrespectful," had "essentially high-jacked the hearing by ignoring [the examiner's] instructions, telling her to be quiet, and doing what he wanted to do," and "act[ed] much like a spoiled child." Accordingly, the referee concluded as a matter of law that there had been a violation in accord with the two counts.

¶ 20. We adopt the referee's findings of fact and conclusions of law with respect to these two counts. We note in particular that Attorney Eisenberg in his argu-

---

disclose that the appearance is in a representative capacity and shall conform to the provisions of Rules 3.3(a) through (c), 3.4(a) through (c), and 3.5."

[10] SCR 20:8.4(g) provides: "It is professional misconduct for a lawyer to: (g) violate the attorney's oath."

[11] SCR 40.15 provides, in relevant part: Attorney's oath.

The oath or affirmation to be taken to qualify for admission to the practice of law shall be in substantially the following form:

I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged.

ments to this court has not specifically attacked any of the findings or conclusions with respect to these counts. Rather, he has conceded that his behavior was "combative" for which he has expressed apology.

## BUSINESS TRANSACTION WITH CLIENT

¶ 21. Count Eight alleges a violation of SCR 20:1.8(a) (a lawyer is not to enter into a business transaction with a client except under certain circumstances).[12]

¶ 22. This count involves Attorney Eisenberg's attorney/client relationship with a client on a building code violation matter which was followed by the client entering into a listing contract to sell the property through his alternate persona of Alan Eisenberg Real Estate Company. Attorney Eisenberg introduced the client to one of his employees, who was serving in a dual role both as a legal assistant for Attorney Eisenberg's law firm and also as an employee of the real estate company. The client was not advised of the conflict of interest, was not given an opportunity to seek independent advice, and did not waive the conflict in writing.

---

[12] SCR 20:1.8(a) provides:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

¶ 23. The employee testified that he knew the client was one of Attorney Eisenberg's law clients but that there was no office policy forbidding real estate transactions with law clients. However, Attorney Eisenberg testified that the real estate listing contract which the client signed was not binding until he approved it, which he never did.

¶ 24. The referee found that there was no indication that the listing contract was invalid until Attorney Eisenberg approved it, there was no evidence to support a finding that Attorney Eisenberg had no direct knowledge of the listing contract under these circumstances, and Attorney Eisenberg's defense that he simply failed to properly supervise his support staff was not persuasive.

¶ 25. We adopt the findings of fact and conclusions of law of the referee. Once again, given the duty imposed on the referee to assess the credibility of the witnesses, we cannot conclude that the findings of fact are clearly erroneous. Furthermore, without question, those findings support the legal conclusion that there was a violation of these two counts.

## OREGON POLICE DISPATCH COMMUNICATIONS

¶ 26. Count Nine alleges the violation of SCR 20:4.4 (a lawyer shall not use means which have no substantial purpose other than to embarrass, delay, or burden a third person in the course of representing a client).[13] Count Ten alleges another violation of SCR 20:8.4(g) in conjunction with SCR 40.15. Count Eleven

---

[13] SCR 20:4.4 provides: "Respect for rights of third persons. In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or

involves another violation of SCR 20:8.4(c) and also 20:4.1(a) (in the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person).[14]

¶ 27. These counts arise out of a series of telephone calls to a police dispatcher made by Attorney Eisenberg from a bar/restaurant in Corvallis, Oregon, where he was appearing pro hac vice for a criminal client. The client had been given a message from a police detective to call him on what turned out to be an unrelated matter. Attorney Eisenberg, allegedly believing the detective was harassing his client, called the number several times eventually reaching the police dispatcher. He told the dispatcher that this was a "life or death emergency," used vulgar language, and demanded to talk to the detective. He did not cooperate with the dispatcher and claimed "I am going to have his [detective's] badge." He also referred to the detective as an "asshole" and a "thug."

¶ 28. The referee took testimony from Attorney Eisenberg with respect to these counts and also listened to the tape of the communications. The referee found as a matter of fact that Attorney Eisenberg (1) "threatened, lied, demanded, swore, insulted . . . acted in a rude and obnoxious manner;" (2) knew that there was no emergency of any sort; and (3) had no purpose other than to "just embarrass or burden the dispatchers." The referee further concluded as a matter of law that this situation "evinced the epitome of an offensive personality" and also violated the other two rules.

---

burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[14] SCR 20:4.1(a) provides: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of a material fact or law to a third person."

¶ 29. Attorney Eisenberg has conceded that the call was "contentious" but basically submits it was simply the result of overzealous representation of his client.

¶ 30. We adopt the referee's findings of fact and conclusions of law with respect to these counts. We have previously rejected the argument that the "offensive personality" language of the Attorney's Oath is unconstitutionally vague or overbroad when applied to an attorney's professional conduct, to the extent Attorney Eisenberg may so contend. *See In re Disciplinary Proceedings Against Beaver,* 181 Wis. 2d 12, 510 N.W.2d 129 (1994). We further note that *State v. Heilprin,* 59 Wis. 2d 312, 207 N.W.2d 878 (1973) found an offensive personality to have been present under circumstances, although different from those in this case, which also involved generally rude, discourteous, abusive, aggressive, and hostile statements like the case here. Accordingly, we hold that the conclusions of law of the referee with respect to these three counts are correct.

## SANCTIONS

¶ 31. The referee noted as a mitigating factor that Attorney Eisenberg has performed work with community and civic groups. However, as aggravating factors the referee noted his substantial disciplinary history and what the referee characterized as: (1) a propensity to lie under oath; (2) a propensity to minimize culpability by trying to place blame on others, portraying himself as the victim, and claiming there was no real injury; and (3) no demonstration of remorse. The referee further stated:

> Eisenberg is exactly the type of attorney that brings disrepute and dishonor on the legal profession. . . . [T]he fact that Eisenberg has continued to conduct himself in a way that violates these standards is simply an indication of his distain [sic] for the appropriate means of conducting oneself as an attorney. . . . [H]e has absolutely no intention of changing.

The referee analogized this case to *In re Disciplinary Proceedings Against Heilprin,* 168 Wis. 2d 1, 482 N.W.2d 908 (1992) (revocation ordered where attorney, previously disciplined for offensive personality, directed sexually explicit and suggestive comments to women clients). Accordingly, the referee has recommended revocation of Attorney Eisenberg's license even though the OLR only asked for a one-year suspension.

¶ 32. Attorney Eisenberg submits that revocation is wholly disproportionate to these violations and, in particular, his "ancient" disciplinary history should be largely disregarded. He distinguishes this situation from *Heilprin* which he believes involved extremely serious charges of sexual impropriety, unlike here. He further notes that in some instances attorneys have repeatedly violated the same disciplinary rules without suffering disbarments. *See In re Disciplinary Proceedings Against Grapsas,* 230 Wis. 2d 751, 602 N.W.2d 526 (1999). He again cited his civic work as a mitigating factor, although that does not necessarily warrant a reduction in reduced sanction. *See In re Disciplinary Proceedings Against Jones,* 160 Wis. 2d 564, 466 N.W.2d 890 (1991). Accordingly, he has asked this court to impose only a public reprimand.

¶ 33. We cannot so easily dismiss Attorney Eisenberg's disciplinary history. It has spanned four decades and demonstrates a clear pattern of inappropriate behavior. Indeed, two of the matters involved

here, concerning the Wisconsin Department of Transportation hearing and the Oregon police dispatch incident, would reflect a pattern even without the behavior leading to the discipline imposed in 1970 and 1988. We must express the highest concern over Attorney Eisenberg's continued and persistent inability to comport himself with the behavior that is expected of attorneys.

¶ 34. While these latest violations, particularly coupled with the extensive prior disciplinary history, would certainly warrant revocation, we will not impose that sanction. Given Attorney Eisenberg's age, revocation might effectively prohibit him ever practicing law again. Age is not necessarily a mitigating factor. *See In re Disciplinary Proceedings Against Fennig,* 227 Wis. 2d 379, 595 N.W.2d 710 (1999) (60–day suspension imposed for 70+-year-old attorney rather than public reprimand). But under these circumstances we hope that a shorter period of forfeiture will suffice to deter other attorneys from engaging in similar misconduct and motivate Attorney Eisenberg, if he ever returns to the practice of law, to conduct himself in an ethical manner, without exception. Accordingly, we impose a one-year suspension of Attorney Eisenberg's license.

¶ 35. In conclusion, we adopt the findings of fact and conclusions of law of the referee. Attorney Eisenberg's misconduct represents a serious failure to comply with the Rules of Professional Conduct. However, in lieu of the referee's recommendation of revocation, we believe that a one-year suspension is appropriate discipline for this conduct and under these unique circumstances.

¶ 36. IT IS ORDERED that the license of Attorney Alan D. Eisenberg to practice law in Wisconsin is suspended for a period of one year, effective April 6, 2004.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Eisenberg shall refund to B.S. the unearned retainer of $2775.69.

¶ 38. IT IS FURTHER ORDERED that Attorney Eisenberg comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶ 39. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Eisenberg shall pay to the OLR the costs of this proceeding.