In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Kyle H. TORVINEN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

Kyle H. TORVINEN, Respondent-Respondent.

Supreme Court

*No. 2009AP2007–D. Oral argument April 16, 2010.
—Decided October 21, 2010.*

2010 WI 123

(Also reported in 790 N.W.2d 67.)

The Court entered the following order on this date:

The Office of Lawyer Regulation (OLR) has appealed a referee's report and recommendation finding that the OLR failed to meet its burden of proof that Attorney Kyle H. Torvinen violated SCR 20:1.9(a), via SCR 20:1.10(a), and SCRs 20:5.1(b) and (c).

A referee's findings of fact will not be set aside unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. We conclude that the referee's findings of fact are not clearly erroneous and we also uphold the referee's conclusions of law that Attorney Torvinen's conduct did not violate any ethical rule. Consequently, we dismiss the OLR's complaint, without costs.

Attorney Torvinen was admitted to the practice of law in Wisconsin in 1993 and practices in Superior with the firm of Knudson, Torvinen, Jones & Kirk, S.C. He has no prior disciplinary history.

In December 2006 Mary and Tony Chavez telephoned Attorney Torvinen's law firm. The Chavezes had not previously been clients of the firm but were looking for a form to use to purchase a building in Superior to house a hairdressing salon. Attorney Parrish Jones returned the Chavezes' phone call. Attorney Jones initially referred the Chavezes to a stationery store where legal forms were available. Attorney Jones subsequently prepared a first draft of a form that would be the starting point for the Chavezes to continue their purchase discussions with Robert Reuhl, the owner of the building. Thinking the work for which he had been retained had been completed, on December 31, 2006, Attorney Jones billed the Chavezes for 1.7 hours of time, $229.50, and closed his file.

Attorney Jones had nothing to do with contacting Reuhl, negotiating with him, or presenting him with the offer to purchase. Sometime after January 15, 2007, the Chavezes contacted Attorney Jones asking about a remedy for the closing not taking place as scheduled. Attorney Jones suggested trying to schedule a new closing date. A closing date was set for February 19, 2007. On February 15, 2007, the Chavezes contacted Attorney Jones saying that because Reuhl was going to have an attorney representing him at the closing, the Chavezes thought they should also have an attorney present to represent them.

Attorney Jones attended the closing with the Chavezes on February 19, 2007. On March 15, 2007, Attorney Jones billed the Chavezes for 3.7 hours to prepare for the closing, attend the closing, and see to

the proper filing of the warranty deed and real estate transfer return. Attorney Jones considered the file closed and his representation of the Chavezes completed.

At the time of the closing, neither Attorney Jones nor the Chavezes had legal or actual notice of a nearly ten-year-old lease that affected some of the parking spaces on the premises the Chavezes were purchasing. The parking lot lease was not brought up at the closing and the lease had never been recorded. The Chavezes apparently learned about the parking lot lease after the closing, shortly after they took possession of the property. Attorney Kenneth Knudson, a partner of Attorney Torvinen, had drafted the lease agreement in 1997 between Reuhl, as lessor, and John Lange, as lessee. The lease granted Lange the non-exclusive use of some parking spaces adjacent to his chiropractic business for ten years, running from January 1, 1998, through December 31, 2007. Lange subsequently sold his chiropractic building, including the rights under the parking lease, to his son-in-law, Dane Laughlin. After the Chavezes purchased the building, they began parking in spaces that had been leased to Dr. Laughlin's business. It was at that point that Dr. Laughlin informed the Chavezes about the lease.

After the Chavezes learned about the parking lot lease, they contacted Attorney Jones again. When Attorney Jones learned that his senior partner, Attorney Knudson, had been involved in drafting the 1997 lease, Attorney Jones advised the Chavezes that he could not assist them and told them to contact another lawyer for help with the lease.

The Chavezes and Laughlin had discussions about the lease and the use of the parking spaces, but were unable to resolve their differences. In late March of

2007 the Chavezes built a ten-foot wooden fence along the boundary line of their property. In frustration about the situation, Laughlin contacted Attorney Torvinen, his friend and counselor at the law firm, about advice on how to make progress with the Chavezes over the lease problem and the fence. Attorney Torvinen told Laughlin that the matter should be resolved in a neighborly fashion. At Laughlin's request, Attorney Torvinen prepared a draft of a letter for Laughlin to use in communicating with the Chavezes. The Chavezes concluded the lease was no longer valid and they refused to remove the fence as requested by Laughlin.

Laughlin asked Attorney Torvinen to proceed with enforcing the lease. On August 10, 2007, Attorney Torvinen sent the Chavezes a letter indicating that his law firm was representing the Lange/Laughlin chiropractic clinic. The letter requested an amicable resolution of the dispute. Attorney Torvinen belatedly learned that Attorney Jones had represented the Chavezes at the real estate closing earlier in the year. The firm's members decided they must consider whether there was a conflict of interest in representing their long-term clients, Lange and Laughlin, against the Chavezes on the fence issue.

Attorney Johanna Kirk, an associate at Attorney Torvinen's firm, was directed to review the Chavez real estate closing file to search for any conflict of interest issues. Members of the firm had numerous discussions and meetings about the conflict of interest issue. After extensive discussions, firm members agreed that representing the Chavezes at the real estate closing was not "the same matter" as the fence dispute and was also not "substantially related" to the fence dispute. Firm members also concluded that Attorney Jones'. representation

of the Chavezes at the closing was minimal and was a reasonable limited scope representation as requested by the Chavezes.

Attorney Torvinen directed Attorney Kirk to proceed with enforcing the lease provisions. Attorney Kirk prepared a summons and complaint and filed the lawsuit against the Chavezes on October 4, 2007. Attorney Jamy Johansen appeared as the attorney of record for the Chavezes in this suit. Attorney Johansen wrote to Attorney Kirk raising the conflict of interest issue.

The grievance against Attorney Torvinen was filed in late 2007. Attorney Torvinen took over handling the lawsuit against the Chavezes in mid-December 2007 from Attorney Kirk. On more than one occasion between mid-October 2007 and late-January 2008, Attorney Johansen demanded the Torvinen law firm withdraw from representation of Lange/Laughlin due to the firm's prior representation of the Chavezes. In mid-December 2007 Attorney Torvinen made the decision to withdraw from the suit but after speaking with Dr. Laughlin, Attorney Torvinen changed his mind. Dr. Laughlin said starting over with new counsel would not be cost-effective and that Attorney Johansen, by his threats and manipulation of the system, would have substantially won on behalf of his clients. Attorney Torvinen advised the OLR that at the request of his client, he was not withdrawing from the lawsuit. After a telephone conversation with OLR Director Keith Sellen in January 2008, Attorney Torvinen and his firm did withdraw from representation. They assisted Dr. Laughlin in finding new counsel. The lawsuit was eventually settled by the Chavezes paying Dr. Laughlin $750.

On August 4, 2009, the OLR filed a complaint against Attorney Torvinen alleging that he violated SCR 20:1.9(a), via SCR 20:1.10(a), by representing Lange/

Laughlin in negotiating on their behalf adversely to the Chavezes without obtaining the Chavezes' informed consent in writing, when the representation was adverse to the Chavezes, who Attorney Jones had previously represented in a substantially related matter. The complaint also alleged that Attorney Torvinen violated SCRs 20:5.1(b) and (c) by directing, ratifying, and supervising Attorney Kirk's representation of Lange/Laughlin in violation of SCR 20:1.9(a), via SCR 20:1.10(a).

The Honorable James R. Erickson was appointed referee. A hearing was held before the referee on November 12, 2009. Referee Erickson issued his report and recommendation on November 24, 2009. The referee concluded the OLR failed to meet its burden of proof that Attorney Torvinen violated any supreme court rules. The referee concluded that Attorney Jones' representation of the Chavezes in drafting an offer to purchase "was a clear case of a limited scope representation which concluded when Attorney Jones sent his billing on December 31, 2006, and at which time the file was closed." The referee also concluded that Attorney Jones' representation of the Chavezes at the real estate closing was likewise a very limited scope representation that had been requested by the Chavezes on February 15, 2007. The referee said limited scope legal representations are permitted by Wisconsin's rules of professional conduct and should be encouraged.

The referee concluded that the real estate closing and the lawsuit over the fence were not the same matter nor were they substantially related. The referee said:

> Despite the modesty of the legal problem, Respondent and the law firm spent untold hours in time and effort in defending the principles they strongly believed

in. It would have been very expeditious for them to "throw in the towel" by conceding and accepting what Respondent and the law firm strongly believed was improper and unjustified discipline. They were justified in not doing that.

Respondent and his law firm, in my opinion, proceeded with careful and conscientious deliberations showing care and concern for all of their clients. They did their best to even consider the local friendly business environment and attempted to amicably resolve the minor legal problem that somehow raged out of proportion. I consider it all to be the equivalent of the old proverbial "tempest in a teapot." I think Respondent Torvinen and the law firm should be commended rather than criticized and disciplined in this OLR prosecution. The legal system is in great need of more problem solving attorneys rather than more litigators. Respondent and his law firm attempted to be ethical and reasonable problem solvers to the best of their abilities.

The OLR appealed, arguing the referee erred in concluding that Attorney Torvinen's representation of Lange/Laughlin did not amount to a conflict of interest under SCR 20:1.9(a). Attorney Torvinen asserts that the referee correctly found that he committed no ethical violation and that his representation of Lange/Laughlin was not the "same" nor a "substantially related" matter as the real estate closing handled by Attorney Jones.

██
From our independent review of the record, we agree with the referee that the OLR failed to establish by clear and substantial evidence that Attorney Torvinen violated any ethical rule. We uphold the referee's legal conclusion that the real estate closing and the lawsuit over the fence were not the same matter nor

584

were they substantially related. In addition, we note that the preamble to the rules of professional conduct for attorneys states:

> [9] In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person, while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules. These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.

We agree with the referee that Attorney Torvinen exercised sensitive professional and moral judgment, and maintained a professional, courteous and civil attitude toward all parties involved in the parking lot dispute. Attorney Torvinen and his law firm spent a great deal of time discussing whether a conflict of interest existed. They concluded there was no conflict. Ultimately, Attorney Torvinen and his firm did withdraw from representing Lange/Laughlin and assisted them in finding substitute counsel. Based upon the foregoing,

IT IS ORDERED that the OLR's complaint is dismissed, without costs.