# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP1118-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against  Stephen M. Compton, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |    v. |
| | Stephen M. Compton, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST COMPTON

| | |
|---|---|
| OPINION FILED: | May 17, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

2013 WI 42

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2010AP1118-D

STATE OF WISCONSIN                    :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Stephen M. Compton, Attorney at Law:**

**Office of Lawyer Regulation,**

          **Complainant,**

     **v.**

**Stephen M. Compton,**

          **Respondent.**

**FILED**

**MAY 17, 2013**

Diane M. Fremgen
Clerk of Supreme Court

          ATTORNEY reinstatement proceeding.  *Reinstatement granted upon conditions.*

          ¶1   PER CURIAM.   We review a report filed by referee James J. Winiarski recommending that the court reinstate, with conditions, the license of Stephen M. Compton to practice law in Wisconsin.   After careful review of the matter, we agree that Attorney Compton's license should be reinstated and that conditions should be placed upon his resumption of the practice of law.   We also agree with the referee that Attorney Compton

should be required to pay the costs of this reinstatement proceeding, which are $4,373.03 as of March 11, 2013.

¶2  Attorney Compton was admitted to practice law in Wisconsin in 1992.  He resides in Waukesha County.  In 2002, he was publicly reprimanded for falsely recording the time he worked on a contingency fee case.  Public Reprimand of Stephen M. Compton, No. 2002-6.  In 2008, Attorney Compton's license to practice law was suspended for 60 days for misconduct related to failing to supervise an inmate performing legal work for him and falsely billing the state public defender for work performed by that inmate.  In re Disciplinary Proceedings Against Compton, 2008 WI 3, 306 Wis. 2d 280, 744 N.W.2d 78.

¶3  In 2009, Attorney Compton was charged with felony criminal conduct in Walworth County.  He was ultimately convicted of possession of narcotic drugs (heroin), a Class I felony, and felony bail jumping, a Class H felony.  Two additional misdemeanor criminal charges for possession of cocaine and possession of drug paraphernalia were dismissed but read in.

¶4  On March 3, 2010, the Office of Lawyer Regulation (OLR) filed a motion seeking the summary suspension of Attorney Compton's law license based on the criminal convictions. Attorney Compton did not contest the motion, and this court summarily suspended his law license on March 16, 2010.

¶5  In May of 2010, the OLR filed a disciplinary complaint alleging Attorney Compton's criminal conduct and seeking a two-year license suspension.  Attorney Compton stipulated to the

2

facts, misconduct, and sanction. On September 8, 2010, this court suspended Attorney Compton's law license for a period of two years, retroactive to March 16, 2010, the date of the summary suspension. In re Disciplinary Proceedings Against Compton, 2010 WI 112, 329 Wis. 2d 318, 787 N.W.2d 831.

¶6 Attorney Compton filed a petition for the reinstatement of his law license on March 12, 2012. The OLR filed its response to the petition for reinstatement on November 2, 2012, and did not oppose the petition. A public hearing on the reinstatement petition was held on December 18, 2012. The referee filed his report and recommendation on February 19, 2013.

¶7 Supreme Court Rule 22.31(1)[1] provides the standards to be met for reinstatement. Specifically, the petitioner must

_____

[1] SCR 22.31(1) states:

The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26 and the terms of the order of suspension.  In addition to these requirements, SCRs 22.29(4)(a)-(4m)[2] provide additional requirements that a

---

[2] SCR 22.29(4)(a) through (4m) provides that a petition for reinstatement shall show all of the following:

  (a) The petitioner desires to have the petitioner's license reinstated.

  (b) The petitioner has not practiced law during the period of suspension or revocation.

  (c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

  (d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

  (e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

  (f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

  (g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

4

petition for reinstatement must show.  All of these additional requirements are effectively incorporated into SCR 22.31(1).

¶8   When we review a referee's report and recommendation, we will adopt the referee's findings of fact unless they are clearly erroneous.  Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶9   We   conclude   the   referee's   findings   support   a determination that Attorney Compton has met his burden to establish by clear, convincing, and satisfactory evidence that he has met all of the standards required for reinstatement.

¶10 The   referee   noted   that   during   the   term   of   his suspension, Attorney Compton has not practiced law and has worked   primarily   as   a   landscaper.   The   referee   found   that Attorney Compton has fully complied with the terms of the order of   suspension   and   that   he   was   not   required   to   make   any

---

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

restitution or settle any claims caused by his misconduct. The referee found that Attorney Compton has maintained competence and learning in the law by attending various educational activities. The referee also found that Attorney Compton's conduct since the time of the suspension has been exemplary and above reproach.

¶11 The referee found that Attorney Compton has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with those standards. The referee found that Attorney Compton can safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts. The referee noted that if his license to practice law is reinstated, Attorney Compton intends to engage in the general practice of law, probably as a sole practitioner.

¶12 The referee found that, according to statements Attorney Compton made to Walworth County sheriff's deputies at the time of his 2009 arrest, Attorney Compton began using illegal drugs around 2006, and he admitted being "coked up" while handling legal cases in court. The referee noted that Deputy Sergeant Patek of the Walworth County Sheriff's Department testified at the reinstatement hearing that Attorney Compton's conduct before his arrest included possession and delivery of both heroin and cocaine. Deputy Sheriff Long of the

6

Walworth County Sheriff's Department testified that Attorney Compton's conduct before his arrest had a major impact on a woman who was a significant person in Attorney Compton's life, and the woman ultimately lost her teaching license as a result of drug conduct and her relationship with Attorney Compton. Deputy Sheriff Long described Attorney Compton as a "great person" and "a very smart attorney."

¶13 The referee noted that Linda Albert, manager of the Wisconsin Lawyers Assistance Program (WisLAP) worked with Attorney Compton beginning on October 26, 2009, when he initially volunteered for one year of monitoring following his arrest.  Attorney Compton subsequently volunteered for an additional four years of monitoring.  Ms. Albert testified that Attorney Compton, without hesitation, has provided access to all of his treatment providers, probation officers, and the OLR, and that he has demonstrated honesty and integrity throughout the monitoring process.  Ms. Albert opined that Attorney Compton has done an exemplary job of fulfilling his monitoring contract and has excelled in consistently meeting the conditions set for him.

¶14 Ms. Albert testified Attorney Compton has a low risk of relapsing given the extended period of time he has been free of drugs and alcohol.  Ms. Albert opined that Attorney Compton is "no longer impaired by his disease and is fit to practice." She recommended that Attorney Compton complete his contract for five years of monitoring, which is scheduled to end on October 1, 2014.  Ms. Albert testified that after five years of being alcohol and drug free, a person's relapse rate

statistically is approximately 14 percent, and she said that rate does not significantly drop with longer abstinence.

¶15 Ms. Albert testified she could not think of a single additional thing Attorney Compton could have done during his monitoring to help with his rehabilitation, and she said he did everything he was asked to do and there were no failures on his part during his monitoring. While Ms. Albert does not believe Attorney Compton requires monitoring beyond October 1, 2014, she agrees that if he is reinstated, the public would be better protected if his monitoring were to continue past that date.

¶16 The referee noted that Attorney Compton successfully completed residential treatment at a hospital. He has successfully passed all required random drug and alcohol tests, completed all required contacts with his monitor, and completed and documented all required community support groups and outpatient treatment. The referee also noted that as of December 18, 2012, Attorney Compton successfully met all requirements to be discharged from probation which resulted from his criminal convictions.

¶17 The referee noted that since the time of his arrest, Attorney Compton lost his marriage, became estranged from his children for a period of time, lost the trust and confidence of the lawyers he used to work with, went through bankruptcy, and lost substantial investments and assets. The referee noted that several lawyers who testified at the hearing on the reinstatement petition said they watched Attorney Compton lose everything that was important to him and that he hit "the very

bottom." However, those lawyers also said they have watched Attorney Compton slowly recover and reestablish strong relationships with his children and his community. Those lawyers believe Attorney Compton's journey through rehabilitation has been remarkable and that he is again fit to practice law.

¶18 Both Deputy Sergeant Patek and Deputy Sheriff Long recognize Attorney Compton's successful rehabilitation to date, but both men believe the period of Attorney Compton's suspension has not been sufficient, given the seriousness of his criminal conduct. Both believe that more time is needed before Attorney Compton is reinstated to the practice of law.

¶19 While the referee said the seriousness of Attorney Compton's conduct cannot be overstated, the referee concluded that since his 2009 arrest, Attorney Compton has done everything conceivable to turn his life around and begin the life-long process of rehabilitation. The referee explained:

> Compton has not undertaken the long and arduous rehabilitation process for purposes of fooling the system into giving back his license, but rather with the determined goal of truthfully turning his life around and again becoming a productive and meaningful member of society. . . .

> Compton willingly accepted all treatment, suggestions[,] and monitoring. He has genuinely impressed every individual he has worked with during his years of monitoring and rehabilitation. . . .

> My personal observations during the course of the hearing concur with the observations of everybody who has worked with Compton since 2009. Compton is a man humbled by his great and numerous errors. For a while, he lost everything that meant anything to him

9

in his life.  I am quite satisfied that Compton is most sincere in his efforts to rehabilitate himself. I believe Compton recognizes that even if he never practiced law again, he would make the same efforts toward rehabilitation that he has made since 2009.

The record shows that Compton never tried to avoid, evade[,] or blame others for his inappropriate conduct.  He does not lie about or cover up what he did.  His approach has been to "bare his soul," ask for help, and do whatever it takes to turn his life around.

I specifically asked Linda Albert of WisLAP whether there was anything Compton failed to do or anything more he could have done as part of his monitoring program.  Linda Albert was quick to reply that there was nothing more the monitoring program could ask of Compton that he has not already done.  Simply put, Compton's sincere efforts at rehabilitation have been outstanding and above question.

¶20  In spite of Attorney Compton's remarkable efforts to turn his life around, the referee did express some concern about the possibility of relapse.  Although Ms. Albert put the risk of a relapse at approximately 14 percent for someone who has been free of drugs and alcohol for five years, the referee said when it comes to trusting a lawyer to serve the public and the legal profession, a 14 percent relapse rate still needs to be addressed.  For that reason, the referee recommends that Attorney Compton remain under close monitoring, similar to his current WisLAP monitoring, for a minimum of two years from the date of his reinstatement.  The referee said extending the monitoring deadline beyond the October 1, 2014 expiration of his current WisLAP monitoring agreement will not only provide further support for Attorney Compton, but will also allow a quicker response to any relapse.

10

¶21 In response to the concerns of the two sheriff's deputies that Attorney Compton's term of suspension has been insufficient given his criminal convictions, the referee pointed out that this court saw fit to suspend Attorney Compton's license for a period of two years. The referee said during that two-year period, Attorney Compton has done everything possible to rehabilitate himself; he appears rehabilitated; and expert testimony shows there is very little more that can be done for him. The referee said to deny reinstatement on the basis that a two-year suspension was not long enough would be second guessing this court's choice of the appropriate period of suspension and would also be ignoring Attorney Compton's nearly perfect record at rehabilitation up to this time.

¶22 This court has carefully evaluated whether Attorney Compton has indeed met the requirements for the reinstatement of his license to practice law in Wisconsin, and we conclude that he has. The behavior that led to his 2010 suspension was very serious. However, Attorney Compton acknowledged the wrongfulness of his conduct, voluntarily entered into a rehabilitation program, and, according to everyone who testified at the hearing on the reinstatement petition, he has in fact turned his life around and is ready to resume the practice of law. We agree with the referee that Attorney Compton has met his burden of proof with respect to all elements needed to justify his reinstatement. We stress that we expect the exemplary behavior which Attorney Compton has exhibited during

the period of his suspension to continue once he resumes the practice of law.

¶23 We share the referee's concern about making every reasonable effort to ensure that Attorney Compton does not relapse. For that reason we agree with the referee that Attorney Compton should continue to participate in a monitoring program for a period of two years from the date of his reinstatement. We also agree with the referee that Attorney Compton should pay the full costs of this proceeding.

¶24 IT IS ORDERED that the license of Stephen M. Compton to practice law in Wisconsin is reinstated effective the date of this order.

¶25 IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Stephen M. Compton shall continue to participate in a WisLAP monitoring program and he shall comply with all conditions imposed as part of that program for a period of two years from the date of this order.

¶26 IT IS FURTHER ORDERED that within 60 days of the date of this order, Stephen M. Compton shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $4,373.03.

¶27 IT IS FURTHER ORDERED that compliance with all of the terms of this order remains a condition of Stephen M. Compton's license to practice law in Wisconsin.

12