# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP2088-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against David V. Moss, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, |
| | v. |
| | David V. Moss, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MOSS

| | |
|---|---|
| OPINION FILED: | July 30, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

SOURCE OF APPEAL:
   COURT:
   COUNTY:
   JUDGE:

JUSTICES:
   CONCURRED:
   DISSENTED:
   NOT PARTICIPATING:

ATTORNEYS:

**2014 WI 95**

NOTICE

**This opinion is subject to further editing and modification.  The final version will appear in the bound volume of the official reports.**

No.   2013AP2088-D

STATE OF WISCONSIN           :           IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against David V. Moss, Attorney at Law:**

**Office of Lawyer Regulation,**

   Complainant,

  v.

**David V. Moss,**

   Respondent.

**FILED**

**JUL 30, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY   disciplinary   proceeding.   *Attorney's   license suspended.*

¶1   PER CURIAM.   On January 23, 2014, referee James C. Boll, Jr. issued a report recommending that Attorney David V. Moss be declared in default, concluding that Attorney Moss engaged in numerous counts of professional misconduct, and recommending that his license to practice law in Wisconsin be suspended for nine months, that he be ordered to make restitution to the Wisconsin Lawyers' Fund for Client Protection

(Fund), and that he pay the full costs of this proceeding, which are $1,123.44 as of February 11, 2014.

¶2 We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. Since Attorney Moss failed to present a defense despite being given the opportunity to do so, we declare him to be in default. Based on our independent review of the record, we conclude that a two-year suspension of Attorney Moss's license to practice law in Wisconsin, rather than the nine months recommended by the referee, is an appropriate sanction. We also agree that Attorney Moss should be ordered to make restitution to the Fund and that he should be assessed the full costs of the proceeding.

¶3 Attorney Moss was admitted to practice law in Wisconsin in 2009 and practiced in Galesville. According to the record, he now lives in the state of Oregon. Attorney Moss's Wisconsin law license is currently suspended for failure to cooperate with OLR grievance investigations, failure to pay State Bar of Wisconsin (State Bar) dues, and non-compliance with trust account certification requirements.

¶4 On September 19, 2013, the Office of Lawyer Regulation (OLR) issued a complaint against Attorney Moss alleging 35 counts of misconduct with respect to his handling of eight client matters.

¶5 The allegations in the 35-page OLR complaint will not be extensively recited or repeated here. Counts One through Five of the complaint arose out of Attorney Moss's representation of S.H. and her then-husband J.H., who hired

2

Attorney Moss to represent them in a joint Chapter 7 bankruptcy proceeding. Attorney Moss charged them a $1,000 flat fee. The bankruptcy petition was never filed. Despite never filing the bankruptcy petition, Attorney Moss informed S.H. that he had spent ten hours working on her case. On February 27, 2012, Attorney Moss sent S.H. a letter saying he was closing his office and moving to Oregon.

¶6 On April 28, 2012, Attorney Moss sent a letter to the OLR saying he would not respond to any grievances. He enclosed his State Bar membership card to serve as his resignation from the State Bar. On May 25, 2012, the OLR wrote to Attorney Moss informing him that voluntary resignation is governed by Supreme Court Rule (SCR) 10.03(7) and that the OLR would continue to notify him of any grievance filed against him.

¶7 In June of 2012, the OLR notified Attorney Moss of the grievance S.H. had filed against him and requested a written response. Attorney Moss failed to respond. On November 14, 2012, this court temporarily suspended Attorney Moss's law license.

¶8 S.H. filed a claim against Attorney Moss with the Fund, and the Fund approved the claim for $1,000.

¶9 Counts Six through Ten of the OLR's complaint arose out of Attorney Moss's representation of G.H., who hired Attorney Moss to represent him in a Chapter 7 bankruptcy proceeding. Attorney Moss charged G.H. a $750 flat fee, but never initiated bankruptcy proceedings. The Fund approved G.H.'s claim for $750.

¶10 Counts Eleven through Fifteen of the OLR's complaint arose out of Attorney Moss's representation of S.J. and J.J., who hired Attorney Moss to represent them in a joint Chapter 7 bankruptcy proceeding. Attorney Moss charged them a $1,000 flat fee. The bankruptcy petition was never filed. The Fund approved a claim for S.J. and J.J. for $1,000.

¶11 Count Sixteen of the OLR's complaint arose out of Attorney Moss's representation of S.K., who hired Attorney Moss to represent him in a Chapter 7 bankruptcy proceeding. Attorney Moss charged S.K. a $500 flat fee. Attorney Moss did file a bankruptcy petition on behalf of S.K. S.K. subsequently hired Attorney Moss to represent him in a post-divorce matter in which a $5,600 money judgment had been entered against S.K. Attorney Moss agreed to request sanctions through the bankruptcy court for the issuance and enforcement of the money judgment and agreed to file a Section 1983 lawsuit. Attorney Moss never requested sanctions through the bankruptcy court and never filed the promised lawsuit.

¶12 Counts Seventeen and Eighteen of the OLR's complaint arose out of Attorney Moss's representation of S.L., who hired Attorney Moss to represent him in a Chapter 7 bankruptcy proceeding. Attorney Moss charged S.L. a $1,600 flat fee. In September of 2010, S.L. purged a bench warrant, issued as a result of an order for contempt in a Trempealeau County case, by posting a $1,000 bond. Attorney Moss filed the bankruptcy petition on behalf of S.L., and he also represented S.L. in two adversary proceedings. As a result of an adversary proceeding

4

filed by Attorney Moss in January of 2011, the $1,000 was returned to Attorney Moss as a preference. Attorney Moss told S.L. he would hold the $1,000 in trust until the bankruptcy was resolved. S.L. tried to contact Attorney Moss regarding the status of his bankruptcy and the $1,000 preference in early February 2011, but Attorney Moss failed to return S.L.'s phone calls.

¶13 In July of 2011, pursuant to SCRs 22.02(6)(b) and 22.10(4), Attorney Moss entered into a diversion agreement with the OLR related to S.L.'s grievance. Attorney Moss breached the conditions of the diversion agreement when he failed to provide to the OLR verification of his attendance at six continuing legal education/ethics credit hours of instruction by July 1, 2012. On August 8, 2012, the OLR director notified Attorney Moss that he was terminating the diversion agreement and referring the matter to investigation. The record indicates that Attorney Moss returned the $1,000 to S.L.

¶14 Counts Nineteen through Twenty-Three of the OLR's complaint arose out of Attorney Moss's representation of C.L. and S.L., who hired Attorney Moss to represent them in a joint Chapter 7 bankruptcy proceeding. Attorney Moss charged them a $1,400 flat fee. The L.s informed Attorney Moss that S.L.'s wages were being garnished as a result of a money judgment entered against them in Trempealeau County. Attorney Moss agreed to take his flat fee from the previously garnished wages and returned the leftover funds to the L.s. Attorney Moss also

5

agreed to negotiate with the L.s' mortgage lender in an attempt to lower their interest rate as part of the representation.

¶15 Attorney Moss filed a bankruptcy petition on behalf of the L.s in March of 2011. In May of 2011, Attorney Moss filed a reaffirmation agreement regarding the L.s' mortgage. Attorney Moss also filed an adversary proceeding to collect S.L.'s garnished wages. As a part of the proceeding, the entire preference payment was returned to Attorney Moss. Attorney Moss failed to account for and return any of the leftover funds to the L.s. In September 2011, Attorney Moss filed a revocation of the reaffirmation agreement. He failed to inform the L.s of the status or results of his purported negotiations with their mortgage lender. He also failed to inform the L.s that he was terminating his representation and/or closing his law office and moving to Oregon, and failed to return their client file.

¶16 Counts Twenty-Four through Twenty-Nine of the OLR's complaint arose out of Attorney Moss's representation of K.Q. and J.Q., who hired Attorney Moss to represent them in a joint Chapter 7 bankruptcy proceeding. Attorney Moss charged them a $1,500 flat fee. He did not have them sign a written fee agreement.

¶17 In February 2012, after missing several scheduled meetings with the Q.s, Attorney Moss met with them and told them he was closing his law office and moving to Oregon. He agreed to continue representing them after the move. The bankruptcy petition was never filed. In April 2012, K.Q. terminated the representation via email and asked Attorney Moss to return her

6

client file and unearned fees. The Fund approved a claim for the Q.s for $1,200.

¶18 Counts Thirty through Thirty-Five of the OLR's complaint arose out of Attorney Moss's representation of K.S. and her then-husband G.G., who hired Attorney Moss to represent them in a joint Chapter 7 bankruptcy proceeding. Attorney Moss charged them a $1,500 flat fee. He did not have them sign a written fee agreement. Despite agreeing to do so, Attorney Moss failed to contact the couple's mortgage lender in an attempt to negotiate a reaffirmation agreement. From September 2010 through August 2011, Attorney Moss failed to return most of the couple's phone calls regarding the status of their bankruptcy. The parties' mortgage lender filed a foreclosure action in February 2011, and a default judgment was granted in April 2011.

¶19 The parties filed for a divorce in June 2011. In August 2011, Attorney Moss filed the bankruptcy petition. In October 2011, Attorney Moss had G.G. sign three reaffirmation agreements, which were filed in December 2011. Attorney Moss informed G.G. that K.S. would need to sign a reaffirmation agreement for her motorcycle, but Attorney Moss failed to take any further action regarding the motorcycle.

¶20 From October 2011 through March 2012, Attorney Moss failed to return K.S.'s numerous phone calls. The parties' divorce was finalized in December of 2011.

¶21 In February of 2012, G.G. and K.S. met with Attorney Moss at his Galesville law office. During the meeting they saw a handgun in Attorney Moss's lap and in his hand as he was

7

sitting behind his desk. Attorney Moss told them he was carrying the handgun for protection from people who were hounding him and from clients who stalked and harassed him.

¶22 Attorney Moss was personally served with the OLR's complaint on September 20, 2013. He did not file an answer to the complaint. On December 18, 2013, the referee sent a letter to Attorney Moss setting a telephone scheduling conference for January 15, 2014. Attorney Moss failed to respond to the letter or appear at the scheduling conference.

¶23 On January 8, 2014, the OLR filed a motion for default judgment. At the January 15, 2014 scheduling conference, of which Attorney Moss had notice, the referee recommended that Attorney Moss be declared in default.

¶24 Attorney Moss has not filed an appeal from the referee's report and recommendation.

¶25 Although Attorney Moss was given the opportunity to present a defense to the OLR's complaint, he failed to do so. Accordingly, we deem it appropriate to declare him in default.

¶26 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶27 There is no showing that the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We

8

also agree with the referee's conclusions of law that Attorney Moss violated the following supreme court rules, some of them in multiple instances:   20:1.3;[1] 20:1.4(a)(3) and (4);[2] 20:1.5(a);[3]

---

[1] SCR 20:1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.4(a)(3) and (4) provides that a lawyer shall "keep the client reasonably informed about the status of the matter" and shall "promptly comply with reasonable requests by the client for information."

[3] SCR 20:1.5(a) states:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

20:1.5(b)(1) and (2);[4] 20:1.15(d)(1) and (2);[5] 20:1.16(d);[6] 20:8.4(g);[7] and 22.03(2)[8] and 22.03(6)[9], enforced via 20:8.4(h).[10]

[4] SCR 20:1.5(b)(1) and (2) states:

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

[5] SCR 20:1.15(d)(1) and (2) states:

(1) Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) Accounting. Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.

[6] SCR 20:1.16(d) states:

¶28 After careful review of this matter, we conclude that the nine-month suspension sought by the OLR and recommended by

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[7] SCR 20:8.4(g) provides that it is professional misconduct for a lawyer to "violate the attorney's oath."

[8] SCR 22.03(2) states:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[9] SCR 22.03(6) states: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[10] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

11

the referee is an insufficient sanction for Attorney Moss's misconduct. Although Attorney Moss had a license to practice law in Wisconsin for only slightly more than three years before his license was suspended, during that short timeframe he engaged in repeated misconduct where he took fees from clients, failed to perform the work for which he was retained, failed to communicate with the clients regarding the status of their matters, and failed to return fees and client files upon request. The incident in which Attorney Moss was brandishing a handgun during a client meeting is disturbing. We believe that a two-year suspension of his license to practice law in Wisconsin is a sanction more commensurate with the misconduct at issue in this case.

¶29 A two-year suspension is also consistent with the level of discipline imposed in prior cases. For example, in In re Disciplinary Proceedings Against Cooper, 2013 WI 55, 348 Wis. 2d 266, 833 N.W.2d 88, we imposed a two-year suspension in a case involving 42 counts of misconduct arising out of nine separate client matters. In In re Disciplinary Proceedings Against Lucius, 2008 WI 12, 307 Wis. 2d 255, 744 N.W.2d 605, we imposed a two-year suspension in a case where the attorney was found to have committed ten counts of misconduct arising out of six client matters. Attorney Moss was found to have committed 35 counts of misconduct in his handling of eight client matters. A two-year suspension of his license to practice law in Wisconsin is an appropriate sanction.

12

¶30  We agree with the referee that Attorney Moss should be required to make restitution to the Fund and that he should be required to pay the full costs of this proceeding.

¶31  IT IS ORDERED that the license of David V. Moss to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶32  IT IS FURTHER ORDERED that within 60 days of the date of this order, David V. Moss should make restitution to the Wisconsin Lawyers' Fund for Client Protection as follows: $1,000 attributable to S.H.; $750 attributable to G.H.; $1,000 attributable to S.J. and J.J.; and $1,200 attributable to K.Q. and J.Q.

¶33  IT IS FURTHER ORDERED that within 60 days of the date of this order, David V. Moss shall pay to the Office of Lawyer Regulation the costs of this proceeding, $1,123.44.

¶34  IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶35  IT IS FURTHER ORDERED that David V. Moss shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶36 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).