# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2528-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Kathleen Anna Wagner, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant-Respondent,<br>   v.<br>Kathleen Anna Wagner,<br>       Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST WAGNER

| | |
|---|---|
| OPINION FILED: | July 3, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 21, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, J. withdrew from participation. |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Kathleen A. Wagner*, Madison. There was an oral argument by *Kathleen A. Wagner*.

For the complainant-respondent, there was a brief filed by *William J. Weigel* and *Office of Lawyer Regulation*, Madison. There was an oral argument by *William J. Weigel*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2014AP2528-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Kathleen Anna Wagner, Attorney at Law:**

**Office of Lawyer Regulation,**

         **Complainant-Respondent,**

    **v.**

**Kathleen Anna Wagner,**

         **Respondent-Appellant.**

**FILED**

**JUL 3, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Professional misconduct found; no discipline imposed.*

¶1  PER CURIAM.  Attorney Kathleen Anna Wagner has appealed a report filed by Referee James C. Boll, concluding that Attorney Wagner committed two counts of professional misconduct and recommending that she be privately reprimanded. The Office of Lawyer Regulation (OLR) has now that asked one of those counts be dismissed.  Thus, what is before the court is Attorney Wagner's challenge to the referee's conclusion that she violated Supreme Court Rule (SCR) 20:1.5(b)(3).  Attorney Wagner

has also challenged the referee's recommendation that she be assessed the full costs of this proceeding.

¶2 Upon careful review of this matter, we conclude that although Attorney Wagner did violate SCR 20:1.5(b)(3), the violation does not warrant the imposition of any discipline. In addition, we find it appropriate, under the unique facts of this case, to depart from our normal custom of imposing full costs, which are $40,639.72 as of March 4, 2019. Instead, we deem it appropriate to require Attorney Wagner to pay $4,500 in costs.

¶3 Attorney Wagner was admitted to practice law in Wisconsin in 1983. She practices in Madison. She has no prior disciplinary history.

¶4 On October 31, 2014, the OLR filed a complaint alleging three counts of misconduct with respect to Attorney Wagner's trust, estate, and tax work for the G. family. W.G., the matriarch of the family, first met with Attorney Wagner on April 10, 2008 and asked Attorney Wagner to provide legal services regarding completing her late husband's estate, funding a living trust of which W.G. was the trustee, and completing her tax return.

¶5 During this initial meeting, W.G. executed a written representation agreement. The agreement called for Attorney Wagner to bill W.G. on an hourly basis at a rate of $250 per hour. The agreement also stated that it was Attorney Wagner's practice to bill for services "upon completion" of the matter, although she retained discretion to bill on a more frequent basis when the fees exceeded the amount of the initial payment.

2

In addition to signing the representation agreement, W.G. also gave Attorney Wagner a check for $500.

¶6 After meeting with W.G. for an hour on April 10, 2008, Attorney Wagner had a 90-minute conversation with W.G.'s prior attorney a few days later. During that conversation, Attorney Wagner learned that numerous marital property assets had not been transferred into the living trust; no one completed the process of transferring those assets into the living trust prior to the death of W.G.'s husband in November 2006; and a number of sub-trusts needed to be created and funded.

¶7 Attorney Wagner contends that, based on her conversations with predecessor counsel, she learned that W.G. was attempting to transfer into the living trust two parcels of waterfront land in Adams county for which she did not have good title because of violations of the Statute of Frauds. In addition, Attorney Wagner claims she learned that W.G. had not properly segregated income between herself and the living trust, nor had she filed proper tax returns. As a result of these discoveries, Attorney Wagner claims that, at a July 30, 2008 meeting, she offered to return to W.G. the uncashed $500 check and the files she had obtained from predecessor counsel. W.G. refused to accept the check, and Attorney Wagner retained it. Attorney Wagner again met with W.G. on September 19, 2008, at which time Attorney Wagner submitted correspondence to W.G. laying out her proposed plan for the estate and trusts. Attorney Wagner deposited the $500 check into her client trust account on October 10, 2008.

3

¶8 According to Attorney Wagner, in late 2008 and early 2009, while W.G. was experiencing health issues and learned that she had a short period of time left to live, W.G. was being pressured about who would be in control of the family assets and handle their disposition after her death. Attorney Wagner states that W.G.'s third eldest child, T.G., a Virginia lawyer who practiced family law, was seeking to take over control of the family's finances. W.G. resisted the pressure and obtained agreements from her four children that W.G. would remain in control of the finances.

¶9 On January 17, 2009, W.G. signed a new representation agreement. W.G. authorized Attorney Wagner to transfer assets from the living trust to a family trust and a marital survivor's trust. Attorney Wagner asserts there was a rush to transfer into the living trust the remaining marital assets that should have been transferred long before. Attorney Wagner said she worked nights and weekends, including 16-hour or more days, to accomplish those transfers.

¶10 W.G. passed away in February 2009. Her son, J.G. became the successor trustee of the W.G. marital survivor's trust and the G. family trust. At or after W.G.'s death, certain beneficiary trusts came into existence for W.G.'s children.

¶11 At some point in 2009, J.G. and T.G. began to ask Attorney Wagner about her fees and the preparation of invoices. In November 2009, J.G. sent Attorney Wagner an email expressly requesting her to provide him with an invoice for her services.

4

On January 15, 2010, Attorney Wagner and J.G. entered into a "Fee Dispute Procedure" agreement. On that same date, as part of the agreement, J.G. gave Attorney Wagner two checks. The first check, for $113,000, was made payable to Wagner Law Offices S.C. and was apparently intended to be applied by Attorney Wagner toward her fees. The second check, in the amount of $47,000, was made payable to Attorney Wagner's client trust account and carried the notation "disputed fee for court to decide." Under the agreement, Attorney Wagner was to provide a detailed billing to J.G. by February 15, 2010.

¶12 Attorney Wagner claims that during late 2009 and early 2010, T.G. began to cause problems and interfere with her working relationship with J.G. On January 5, 2010, T.G. sent Attorney Wagner an email saying he would be in Madison on January 16-18 and that he wanted her to provide an invoice and back-up receipts to J.G. by that date. On January 8, 2010, T.G. filed a demand for fee arbitration with the State Bar of Wisconsin.

¶13 In April 2010, T.G. filed a grievance against Attorney Wagner with the OLR. In July 2010, T.G. filed a lawsuit in Dane County Circuit Court against Attorney Wagner and her law firm on behalf of himself, J.G., and his two other siblings. The complaint asked for a declaratory judgment as to the amount of fees that Attorney Wagner was owed.

¶14 In April 2011, in the course of the lawsuit, the G. siblings served a request asking Attorney Wagner to produce any documents identifying any compensable legal services provided to

5

W.G., her agent, or her successor-death trustee, J.G. The circuit court issued an order requiring Attorney Wagner to prepare and send her invoices to the plaintiffs by June 14, 2011. On June 6, 2011, Attorney Wagner filed a request for an extension of time, which the court denied. Attorney Wagner did not submit the invoices by June 14, 2011. Attorney Wagner later renewed her motion for an extension of time, this time including a supporting affidavit from her doctor. The circuit court granted a stay of all discovery in the case from June 22, 2011 to October 4, 2011, due to Attorney Wagner's health.

¶15 When the stay expired, the circuit court issued an order scheduling Attorney Wagner's deposition for November 14, 2011 and requiring her to submit to J.G. "an annotated bill for services provided by Wagner Law Offices, S.C." Attorney Wagner did not provide the invoices by November 1, 2011. The circuit court held another scheduling conference on November 30, 2011, and established a new deadline of January 3, 2012 for Attorney Wagner to provide her legal invoices. Attorney Wagner met that deadline when she submitted her invoices on January 3, 2012. This was approximately 25 months after J.G. had made his initial written request, via email, for the invoices.

¶16 The OLR acknowledged at oral argument that on April 24, 2013, the circuit court found that Attorney Wagner did not overcharge the G. siblings for her legal services and in fact she had under billed. Following the circuit court's ruling, the parties reached a settlement as to fees and the plaintiffs voluntarily dismissed their lawsuit.

¶17 The OLR's complaint alleged the following counts of misconduct:

**Count 1:** By failing to deposit W.G.'s $500 check for advanced fees into her IOLTA trust account for six months, Attorney Wagner violated SCR 20:1.15(b)(4).[1]

**Count 2:** By failing to respond to her client's request for her billing invoice for at least 25 months, Attorney Wagner violated former SCR 20:1.5(b)(3).[2]

**Count 3:** By initially asserting that she was entitled to legal fees of $167,000 for her services without providing any invoice, then by billing $85,575 for her services, all at $350 per hour despite a fee agreement to the contrary, when the reasonable fee for her services was $64,927.50 plus $102.30 for mileage, Attorney Wagner charged an excessive fee in violation of SCR 20:1.5(a).[3]

---

[1] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(4) provided:

Except as provided in par. (4m) unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[2] SCR 20:1.5(b)(3) provides: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses.

[3] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable

(continued)

7

¶18 Attorney Wagner filed an answer to the complaint on December 8, 2014. The referee was appointed on January 22, 2015.

¶19 After extensive litigation, both the OLR and Attorney Wagner moved for summary judgment. On May 17, 2017, the referee issued his report granting summary judgment in favor of the OLR as to Counts 1 and 2 of the complaint.[4] With respect to Count 1,

---

amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[4] On August 16, 2016, the OLR voluntarily dismissed Count 3, saying its decision was based on the OLR's receipt of additional information from witnesses during litigation, a thorough review of the underlying Dane county proceeding, and consultation with its expert on the fee issue.

8

the referee found that by failing to deposit W.G.'s $500 check into her trust account for six months Attorney Wagner violated SCR 20:1.15(b)(1), which states:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.[5]

¶20 With respect to Count 2, the referee noted that Attorney Wagner indicated she was unable to prepare an invoice for legal services because T.G. failed to provide her with certain documents. The referee stated he did not find that argument to be credible since an attorney does not need ancillary documents in order to create legal invoices. The referee also pointed out that Attorney Wagner did eventually produce legal invoices without the documents she claimed she needed.

¶21 The referee noted that between August 2009 and January 3, 2012, both T.G. and J.G. sought to obtain legal invoices from Attorney Wagner on numerous occasions, and they also sought to enter into a fee dispute procedure with the State Bar of Wisconsin. In addition, the referee said the Dane County Circuit Court ordered Attorney Wagner to produce legal invoices,

---

[5] Count 1 of the OLR's complaint alleged that Attorney Wagner's failure to deposit W.G.'s $500 check for advanced fees into her IOLTA trust account for six months constituted a violation of SCR 20:1.15(b)(4), a different subsection of the rule than appeared in the summary judgment material.

9

but Attorney Wagner failed to comply with those court orders. The referee said the record was clear, and there was no material issue of fact that Attorney Wagner failed to provide invoices for legal services for 25 months, despite requests from her client and his family and despite multiple court orders.

¶22 The referee noted that Attorney Wagner offered a number of mitigating factors as to why she did not timely produce the invoices: her hard drive crashed; she was unable to provide invoices because the G. family did not produce documents necessary to complete the invoices; and her failure to produce the invoices was due to ongoing serious medical issues. The referee said if those statements were true, those reasons would go toward mitigation of discipline, not to whether a violation of a supreme court rule occurred.

¶23 As to the appropriate sanction for the two counts of misconduct, the referee found that Attorney Wagner's violation of SCR 20:1.15(b)(1) was de minimis and that discipline was not appropriate. As to Attorney Wagner's failure to respond to numerous requests to provide legal invoices, the referee took into account Attorney Wagner's medical condition and with that mitigating factor the referee concluded that a private reprimand was an appropriate sanction.

¶24 In her appeal, Attorney Wagner argues that the referee wrongly concluded that she violated SCR 20:1.5(b)(3) because she was "blocked" by her client from access to the records she needed to finalize invoices for work she performed. Attorney Wagner appears to argue that she would have been able to produce

10

the invoices much sooner if T.G. had not interfered. She also seems to assert that since she did not keep contemporaneous time records she needed all of the documents she prepared for W.G. in order to recreate accurate bills. She also apparently believes she was not obligated to provide invoices for her services until those services were completed and there had been a court decision on how the advanced fees were to be allocated.

¶25 As to Count 1 of the OLR's complaint concerning the failure to deposit the $500 check for six months, Attorney Wagner contends that she exercised her right to rescind the April 2008 representation agreement because she learned W.G. had withheld material information during their initial April 10, 2008 meeting. Attorney Wagner seems to imply that because she rescinded the representation agreement, she did not have an attorney-client relationship with W.G. during the period of April to October 2008 and, as a result, she had no obligation to deposit the $500 check into her client trust account. She does not explain, however, why, if she rescinded the representation agreement, she was not immediately obligated to return the check to W.G. Attorney Wagner also seems to advance the contradictory argument that because she "earned" the $500 fee by her "exploratory work," she did not have to place the $500 check into her client trust account. She fails to explain why she had "earned" the fee if in fact she had rescinded the representation agreement, nor does she explain why she ultimately placed the $500 into her client trust account in October 2008 if she had already "earned" it.

11

¶26 The OLR has asked this court to dismiss Count 1 of the complaint because the violation found by the referee, as requested by the OLR in its summary judgment motion, does not match the violation alleged in the complaint. Count 1 of the complaint alleged that Attorney Wagner's failure to deposit the $500 check from W.G. for several months constituted a violation of SCR 20:1.15(b)(4), which requires that "unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g)." The OLR's summary judgment motion asked the referee to find that the failure to deposit the check constituted a violation of SCR 20:1.15(b)(1), which provides that "a lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties in the lawyer's possession in connection with a representation." It was this rule that the referee found had been violated. The OLR says the summary judgment motion inadvertently misstated which rule had been violated and while it continues to believe that Attorney Wagner violated both subsections of SCR 20:1.15, it suggests that the most fair result for Attorney Wagner is that Count 1 be dismissed.

¶27 As to Count 2 of the complaint, the OLR says this is a straightforward matter of Attorney Wagner taking over two years to produce invoices after J.G. first asked for the preparation of final bills. The OLR says during that two-year time frame, a circuit court issued multiple orders requiring Attorney Wagner to provide invoices for her work, but she failed to comply with those orders. While Attorney Wagner said she was prevented from

12

producing the invoices because T.G. would not produce certain documents to her, the OLR points out that Attorney Wagner was ultimately able to produce invoices without those requested documents. Thus, the OLR argues it was not the lack of documents that delayed the production of the invoices. The OLR says the undisputed facts as found by the referee support the conclusion that Attorney Wagner failed to promptly respond to her client's request for fee information, in violation of SCR 20:1.5(b)(3).

¶28 Attorney Wagner does not specifically address the issue of the appropriate sanction in her brief. Instead, she argues that both Counts 1 and 2 should be dismissed so no discipline should be imposed.

¶29 The OLR argues that, even with the dismissal of Count 1, the proper level of discipline for Count 2 would be a private reprimand.

¶30 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶31 As an initial matter, we accede to the OLR's request to dismiss Count 1.

¶32 Turning to Count 2, after careful review of the matter, we conclude there has been no showing that any of the

13

referee's findings of fact are clearly erroneous.  Accordingly, we adopt them.  We further agree with the referee's conclusion of law that Attorney Wagner violated SCR 20:1.5(b)(3) by failing, for more than two years, to prepare and submit invoices for legal work she performed on behalf of the G. family.  While T.G.'s actions no doubt irritated Attorney Wagner and some of his actions may have been without merit or justification, Attorney Wagner nonetheless had an obligation to promptly respond to requests for billing information.  In addition, Attorney Wagner failed to keep contemporaneous time records as she went along that would have enabled her to prepare an invoice in a timely fashion.  Although the referee concluded that Attorney Wagner's health problems were a mitigating factor, she has failed to present evidence to show that her health problems prevented her from preparing the invoices for the entire 25 month period of the delay.  Accordingly, we agree with the referee that Attorney Wagner violated SCR 20:1.5(b)(3).

¶33  In spite of the fact that we agree that the OLR met its burden of proof as to Count 2, we decline to impose any discipline.  Although there was an unacceptable delay in Attorney Wagner's producing the invoices, this case appears to present a unique set of circumstances that are unlikely to be repeated in Attorney Wagner's future practice of law.  For that reason, even though we agree that there was a violation of a supreme court rule, we opt not to impose any sanction.

¶34  The OLR advises that it is not seeking a restitution award, and we do not order restitution.  The remaining issue to

14

be resolved in this matter is the issue of costs. The referee recommends that Attorney Wagner bear the full costs of the proceeding. The OLR agrees. Attorney Wagner believes no costs should be imposed. Assessment of costs in OLR matters is governed by SCR 22.24.

¶35 Our general policy is that upon a finding of misconduct it is appropriate to impose all costs upon the respondent. In some cases the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising our discretion regarding the assessment of costs, we consider the statement of costs, any objection and reply, the recommendation of the referee, and all of the following factors:

    (a)  The number of counts charged, contested, and
         proven.

    (b)  The nature of the misconduct.

    (c)  The level of discipline sought by the parties and
         recommended by the referee.

    (d)  The respondent's cooperation with the
         disciplinary process.

    (e)  Prior discipline, if any.

    (f)  Other relevant circumstances.

See SCR 22.24(1m)

¶36 The complaint in this matter alleged three counts of misconduct and originally sought a 60-day suspension of Attorney Wagner's license. Although the Dane County Circuit Court issued a decision in April of 2013 concluding that Attorney Wagner may

15

well have undercharged for the work she performed, in its October 31, 2014 complaint the OLR nevertheless alleged that Attorney Wagner had charged an excessive fee. The OLR dismissed Count 3 of the complaint and changed the sanction it was seeking to a reprimand in August 2016. After the referee issued his report, the OLR agreed to dismiss Count 1, leaving only Count 2, which arose out of Attorney Wagner's lengthy delay in submitting invoices for the legal work she performed.

¶37 Count 3 of the complaint, which alleged that Attorney Wagner charged an excessive fee for her services, was undisputedly the most serious charge lodged by the OLR. We conclude that if Count 3 had not been charged, the costs in this matter would have been far less. We conclude that absent Count 3 the costs would have been approximately $4,500. Thus, under the extraordinary circumstances of this case, we deem it appropriate to assess $4,500 in costs.

¶38 IT IS ORDERED that Count 1 of the OLR's complaint is hereby dismissed.

¶39 IT IS FURTHER ORDERED that we find Kathleen Anna Wagner violated SCR 20:1.5(b)(3); however we impose no discipline.

¶40 IT IS FURTHER ORDERED that within 60 days of the date of this order, Kathleen Anna Wagner shall pay to the Office of Lawyer Regulation costs in the amount of $4,500.

¶41 SHIRLEY S. ABRAHAMSON, J., withdrew from participation prior to oral argument.

16